# United States Court of Appeals

*for the*

# Fifth Circuit

Case No. 24-10951

RYAN, L.L.C.,

*Plaintiff-Appellee,*

CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA;
BUSINESS ROUNDTABLE; TEXAS ASSOCIATION OF BUSINESS;
LONGVIEW CHAMBER OF COMMERCE,

*Intervenor Plaintiffs-Appellees,*

v.

FEDERAL TRADE COMMISSION,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS, DALLAS, IN CASE NO. 3:24-CV-986,
ADA ELENE BROWN, U.S. DISTRICT JUDGE

## BRIEF OF NYU LANGONE HEALTH AS *AMICUS CURIAE* IN SUPPORT OF DEFENDANT-APPELLANT FEDERAL TRADE COMMISSION

JODYANN GALVIN
CYNTHIA GIGANTI LUDWIG
HODGSON RUSS LLP
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York 14202
(716) 856-4000

MARTIN POWERS & COUNSEL, PLLC
MEAGAN MARTIN POWERS, *Of Counsel*
1431 Greenway Drive, Suite 950
Irving, Texas 75038
(214) 612-6471

*Attorneys for Amicus Curiae*

*Ryan, LLC v. Federal Trade Commission,* No. 24-10951

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Federal Rule of Appellate Procedure 26.1 and Fifth Circuit Rule 28.2.1, the undersigned counsel for amicus curiae NYU Langone Health certifies that, to the best of its knowledge, the following listed persons and entities have an interest in the outcome of this case. These representations are made in order that the judges of this honorable Court may evaluate possible disqualification or recusal.

American Academy of Emergency Medicine

American Hospital Association

American Hotel & Lodging Association

The American Investment Council

American Property Casualty Insurance Association

Amici Curiae Law Professors

Araiza, William

Associated Builders and Contractors Inc.

Badgley, Tyler S.

Bradley Arant Boult Cummings LLP

Brown, Hon. Ada

Burke, Arthur

Burns Charest LLP

Business Roundtable

Carroll, Kelly Anne

The Chamber of Commerce of the United States of America

Coleman, Jesse Maughan

Consumer Technology Association

Crooks, Jamie

Cuneo, Gilbert & LaDuca

Davis Polk & Wardwell LLP

Democracy Forward Foundation

Department of Justice – Civil Division

DiSalvo, Nina Elizabeth

Dougherty, Elizabeth

Epstein Becker & Green PC

Fairmark Partners LLP

Federal Trade Commission

Federation of American Hospitals

The Fillmore Law Firm LLP

Fillmore, Charles W.

Fillmore, H. Dustin, III

The Futures Industry Association

Gaetz, Matt

Galvin, Jodyann

Gibson Dunn & Crutcher LLP

Goodnature, Taisa M.

Hauptman, Aaron David

Ho, Allyson

Hodgson Russ LLP

Holleman, Michael Boyce, II

The Home Care Association of America

Hooper Lundy & Bookman

Hossain, Eushrah

Howard Law & Policy Group PLLC

Howard, Paul Arthur, II

Independent Electrical Contractors

International Franchise Association

Katten Muchin Rosenman LLP

Khan, Lina M.

Kiernan, Elizabeth Ashley

Kilberg, Andrew G. I.

Kloster, Andrew

Law Offices of John E. Wall, Jr.

Legal Scholars

Lemley, Mark

Lewis, Amanda Gale

Lex Lumina PLLC

Littleton, Judson O.

Liu, Wendy

Longview Chamber of Commerce

Loya, Edward Joseph, Jr.

Lubbers, Jeffrey

Ludwig, Cynthia Giganti

Lynch, Christopher

Macaluso, Tricia Wisenbaker

Malone, Phillip R.

The Managed Funds Association

Martin Powers & Counsel PLLC

Mayer Brown LLP

McDermott Will & Emery

McMahon, Madeline Marie

Mehrotra, Neal

Mills Legal Clinic at Stanford Law School

Mintz, Marcus L.

Mody, Arjun

*Ryan, LLC v. Federal Trade Commission,* No. 24-10951

National Association of Manufacturers

National Association of Wholesaler Distributors

National Employment Law Project

National Federation of Independent Business Small Business Legal Center Inc.

National Retail Federation

Nicholson, Darren P.

NYU Langone Health

NYU Grossman Long Island School of Medicine

NYU Grossman School of Medicine

NYU Langone Health System

NYU Langone Hospitals

Pagonis, Katrina A.

The Partnership for New York City

Powers, Meagan Martin

Public Citizen

Public Rights Project

The Restaurant Law Center

Rigby, Katherine G.

Rosenthal, Joshua A.

Ryan LLC

Saharsky, Nicole A.

*Ryan, LLC v. Federal Trade Commission,* No. 24-10951

Salgado, Richard D.

Samburg, Mark

Sayles, Robert L.

Scalia, Eugene

The Securities Industry and Financial Markets Association

Seligman, David

Seyfarth Shaw LLP

Shane, Peter M.

Small Business Majority Foundation

Society for Human Resource Management

Sullivan & Cromwell LLP

Tayrani, Amir

Texas American Federation of Labor and Congress of Industrial Organizations (Texas AFL-CIO)

Texas Association of Business

Thurston, Robin

Towards Justice

Tremain Artaza PLLC

Tremain, Ashley E.

Twelve Texas Local Elected Officials

United States Council for International Business

United States Department of Justice

*Ryan, LLC v. Federal Trade Commission,* No. 24-10951

United States House of Representatives, Office of Representative Matt Gaetz

US Chamber Litigation Center

Von Bokern, Jordan

Wall, Jeffrey B.

Wall, John E., Jr.

Weibust, Erik W.

Westmoreland, Rachael Lynn

Wexler, Michael D.

Zuckerman, Joshua R.

s/Jodyann Galvin

Jodyann Galvin

Counsel of record for NYU Langone Health

# TABLE OF CONTENTS

PAGE

INTEREST OF AMICUS CURIAE ........................................................................1

PRELIMINARY STATEMENT ...............................................................................3

ARGUMENT ............................................................................................................4

I.      NON-COMPETES HAVE A NEGATIVE
       IMPACT ON HEALTH CARE.......................................................................4

II.     ASSOCIATIONAL STANDING VIOLATES
       ARTICLE III'S STANDING REQUIREMENTS ........................................8

III.    OTHER CONCERNS WEIGH
       AGAINST ASSOCIATIONAL STANDING ...............................................14

CONCLUSION .......................................................................................................18

# TABLE OF AUTHORITIES

PAGE

**Federal Cases**

*Am. Legion v. Am. Humanist Ass'n,*
    588 U.S. 29 (2019)......................................................................9, 11

*ASARCO Inc. v. Kadish,*
    490 U.S. 605 (1989)......................................................................14

*Ass'n of Am. Physicians & Surgeons v. Food & Drug Admin.,*
    13 F.4th 531 (6th Cir. 2021) ......................................................13, 14

*Baker v. Carr,*
    369 U.S. 186 (1962)........................................................................8

*Food & Drug Admin. v. All. for Hippocratic Med.,*
    602 U.S. 367 (2024)..................................................................13, 14

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,*
    528 U.S. 167 (2000).....................................................................13

*Hollingsworth v. Perry,*
    570 U.S. 693 (2013)....................................................................9, 10

*Hunt v. Wash. State Apple Advert. Comm'n,*
    432 U.S. 333 (1977).....................................................................15

*Int'l Union v. Brock,* 477 U.S. 274 (1986) ...........................................12

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992).........................................................8, 9, 13, 14

*Ret. Chicago Police Ass'n v. City of Chicago,*
    76 F.3d 856 (7th Cir. 1996) .........................................................17

*Sea Shore Corp. v. Sullivan,*
    158 F.3d 51 (1st Cir. 1998).........................................................17

PAGE

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) .........................................................................9

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) .......................................................................10

*United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*,
   517 U.S. 544 (1996) .......................................................................15

*Warth v. Seldin*,
   422 U.S. 490 (1975) ...............................................................8, 10, 13

*Whitmore v. Arkansas*,
   495 U.S. 149 (1990) .........................................................................9

**Rules**

FED. R. CIV. P. 23(a)(3), (4) .................................................................16

**Regulations**

89 Fed. Reg. 38,342 (May 7, 2024) .........................................................1

89 Fed. Reg. at 38,374-402 ..................................................................7

89 Fed. Reg. at 38,383 .......................................................................6

89 Fed. Reg. at 38,406-11 ....................................................................7

**Other Authorities**

Aaron-Andrew P. Bruhl, *One Good Plaintiff is Not Enough*,
   67 DUKE L.J. 481 (2017) ...................................................................16

Michael Morley & F. Andrew Hessick, *Against Associational
   Standing*, 91 U. CHI. L. REV. 1539 (2024) ........................................11, 16, 17

Amicus curiae NYU Langone Health is one of the nation's premier academic medical centers. It is comprised of the NYU Langone Health System, NYU Langone Hospitals, the NYU Grossman School of Medicine, and the NYU Long Island School of Medicine. NYU Langone Health employs over 3,500 physicians, has six in-patient locations, and operates more than 320 physician/ambulatory sites in two states. NYU Langone Health's success is attributable to its devotion to excellence in patient-centered care.

Post-employment non-compete clauses in doctor agreements are harmful for patients, and NYU Langone Health therefore supported the rule adopted by the Federal Trade Commission ("FTC") banning non-compete clauses in employment agreements (the "FTC Non-Compete Clause Rule" or "the Rule"). *See* 89 Fed. Reg. 38,342 (May 7, 2024). NYU Langone Health filed its amicus

---

[1] Prior to filing, NYU Langone Health obtained consent from Plaintiff, Ryan, LLC, the Plaintiff-Intervenors Chamber of Commerce of the United States of America, Business Roundtable, Texas Association of Business, and Longview Chamber of Commerce, and Defendant Federal Trade Commission to file this amicus brief. No party to this appeal assisted or contributed in the preparation of this amicus brief, and NYU Langone Health's counsel authored the brief in whole.

curiae brief at the District Court (*see* ROA.4252-66), in part, to respond to the brief filed by another amicus, the American Hospital Association ("AHA") in which the AHA purported to express its members' opposition to the Rule. *See* ROA.3904-30. NYU Langone Health is a member of the AHA, and the AHA did not account for the support of the Rule by NYU Langone Health and, quite possibly, others of its members. Here, similarly, Plaintiff-Intervenor Chamber of Commerce of the United States of America (the "Chamber") is an association which purports to represent the interest of its members. The Chamber identifies just three specific members — of its 300,000 members and the 3 million businesses it represents — who claim to be harmed. NYU Langone Health's interest in the case lies in (i) its support of the Rule and concern that non-compete clauses have a negative impact on the provision of health care for the public and (ii) addressing the significant constitutional dangers arising from the associational standing asserted by the Chamber and the other Plaintiff-Intervenors.

NYU Langone Health supports the FTC's Appeal from the District Court's August 20, 2024 Final Judgment (1) granting the Motions for Summary Judgment filed by Plaintiff, Ryan, LLC, and Plaintiff-Intervenors, the Chamber, Business Roundtable, Texas Association of Business, and Longview Chamber of

Commerce (the "Plaintiffs-Intervenors"; together with Ryan, LLC, the "Plaintiffs"), and (2) denying the FTC's Cross-Motion for Summary Judgment (the "Final Judgment"). *See* ROA.5639.

## PRELIMINARY STATEMENT

The Final Judgment issued by the District Court granted a nationwide injunction barring the implementation of the FTC Non-Compete Clause Rule. ROA.5639. NYU Langone Health has formally expressed its support of the Rule in the District Court below, in the Eleventh Circuit Court of Appeals, and during the rulemaking process. It does not agree with the District Court's ruling nor Plaintiffs' arguments that the Rule will irreparably harm business operations, impair the protection of confidential information and customers from competitors (*see* ROA.784-86), and result in the loss of bargained-for contractual business protections. *See* ROA.980-81.

Plaintiff-Intervenors, including the Chamber, have not alleged any injury to themselves. Instead, the Chamber specifically asserts associational standing. But in doing so, it has avoided articulating: whether any of its 300,000 members other than the three it has identified have actually been or allege to have been injured; whether any of its members support the Rule; and whether any of its

3

members benefit from the Rule. *See* ROA.870. It makes no sense, then, that the Chamber could be granted relief for all of its members.

## ARGUMENT

### I.     NON-COMPETES HAVE A NEGATIVE IMPACT ON HEALTH CARE

NYU Langone Health's support of the FTC Non-Compete Clause Rule predates this lawsuit. Robert I. Grossman, M.D., Dean and Chief Executive Officer of NYU Langone Health, commented in support of the proposed rule, specifically with respect to doctors. That letter was presented in NYU Langone Health's amicus brief at the District Court. ROA.4241-49. As stated by Dr. Grossman, "non-compete post-employment clauses in doctor employment agreements are anathema to excellence in patient-centered care." ROA.4241. The reason, as Dr. Grossman succinctly explained, is that "[i]t is in the physician's and the healthcare public's interest that skilled doctors be able to effectuate change without having to leave their community, or sit out from their professional practice, for one or more years." ROA.4242. Accordingly, "[t]he overriding reason to ban non-compete post-employment clauses in doctor agreements is the harm they can deliver to patients." ROA.4241.

Specifically, Dr. Grossman explained that non-compete post-employment clauses significantly impact: (1) the patient-doctor relationship; (2) patient access; and (3) patient choice. ROA.4241. And this impact manifests in a number of ways.

For example, forcing doctors to relocate significant distances due to the enforcement of a non-compete clause may sever long-standing patient-doctor relationships. A patient's preferred physician may become out-of-network if relocation forces them off the patient's health insurance or health plan network. In that circumstance, the patient may be forced to choose another, non-preferred, in-network physician or shoulder a financial burden to continue to see the now relocated, out-of-network doctor. ROA.4241-42. Relocation also imposes a heavy burden on doctors and their families by uprooting them simply to avoid a non-compete clause. *See* ROA.2074-75 (Brief of Amicus Curiae American Academy of Emergency Medicine). ROA.4242.

Enforcement of non-compete clauses can exacerbate physician shortages in areas of special medical expertise, where there may already be few such qualified physicians in a particular geographic area to care for such patients. As Dr. Grossman observed, such a scenario "reduces the number of available specialists

which will absolutely hinder patient access by increasing wait times - - that, of course, assumes the remaining doctors have the capacity to take on new patients." *See* ROA.4242.

Moreover, non-compete post-employment clauses may trap physicians in disadvantageous employment situations. As Dr. Grossman stated, "[t]he doctor, who cannot leave their employer, has no bargaining leverage to improve their own situation or the quality of care of their patients," thus the "physician and the patients are put at a significant disadvantage, because the non-compete clause completely prevents curing the disadvantage." ROA.4242; *see also* FTC Appeal Brief (Dkt. 41) at 40 (stating that "non-competes tend to reduce the earnings and job mobility for both workers who are subject to non-competes and those who are not") (citing 89 Fed. Reg. at 38,383).

Non-compete clauses additionally chill innovation in the healthcare sector. "[Q]uality patient care and safety is enhanced when hospitals and physician groups have to compete for contracts . . . . But competition among these entities to provide the highest-quality and highest-value care to patients seeking . . . care is stifled when non-compete clauses held by one group or hospital bar a better or more innovative group from vying for the contract."

*See* ROA.2079; *see also* ROA.4242-43 (commenting that the enforcement of

non-compete clauses is anti-competitive, as it inhibits the ability of healthcare

institutions to recruit talented physicians); FTC Appeal Brief (Dkt. 41) at 39

(non-competes "negatively affect competitive conditions in labor, product, and

service markets by preventing workers from starting competing businesses and

by preventing employers from competing to hire the best workers") (citing

89 Fed. Reg. at 38,374-402, 38,406-11); *see also id*. at 39-40 ("[B]y cutting off

competition, non-competes suppress labor, mobility, depress earnings, reduce

job quality, decrease new business formation, and stifle innovation") (citing

89 Fed. Reg. at 38,374-402).

Finally, non-compete clauses often lead to lengthy, costly, and

burdensome disputes and formal litigation, causing hospitals and physicians to

spend precious time and resources that are better devoted to providing patient-

centered care. ROA.2081 (Brief of Amicus Curiae American Academy of

Emergency Medicine). NYU Langone Health has itself diverted resources to

non-compete disputes.

## II. ASSOCIATIONAL STANDING VIOLATES ARTICLE III'S STANDING REQUIREMENTS

Merits of the Rule aside, the sweeping relief granted by the District Court is unwarranted. The nationwide injunction reflects that the Chamber has members across the country, but the Chamber lacks standing in this action, as do the other Plaintiff-Intervenors. To have standing under Article III of the United States Constitution, a plaintiff must have "'such a personal stake in the outcome of the controversy' as to warrant his invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). A plaintiff must show: (1) injury in fact; (2) a causal connection between the injury alleged and the conduct complained of; and (3) that the injury would likely be redressed by a favorable judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

In this case, the Chamber does not claim its own injury; instead, it asserts associational standing based on the alleged injury suffered by its members. ROA.870. The fundamental problem with granting an association like the Chamber standing is that it violates the Article III requirement that injury in fact supporting standing be "concrete and particularized," and "actual or imminent, not

'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 560 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). These requirements demand that the plaintiff *itself* experience a concrete injury. An injury that is merely "abstract" does not suffice — the injury "must actually exist," and cause real-world harm to the plaintiff. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016); *see also Am. Legion v. Am. Humanist Ass'n,* 588 U.S. 29, 87 (2019) (Gorsuch & Thomas, JJ., concurring). Moreover, an injury to another person is not adequate. The "particularized" requirement demands that the injury "'affect the plaintiff in a *personal* and *individualized* way. '" *Spokeo,* 578 U.S. at 339 (emphasis added) (quoting *Lujan,* 504 U.S. at 560, n.1).

The injury requirement guards against what the Chamber is trying to do here by asserting associational standing: obtain a judicial judgment by asserting legal rights that belong to others. "Article III standing is not to be placed in the hands of concerned bystanders who will use it simply as a vehicle for the vindication of value interests." *Hollingsworth v. Perry*, 570 U.S. 693, 707 (2013) (quotation and citation omitted). The Chamber has not alleged that all or even a majority of its members face injury. It specifies injury to only three of its 300,000 members.

The role of the judiciary is to resolve "real" disputes relating to "the rights of individuals." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Without a return to the basic principles underlying Article III, courts will be required to uphold associational standing and thereby address "abstract questions of wide public significance" — like the wisdom of the FTC's Non-Compete Clause Rule — when those concerns should be left to "other governmental institutions[.]" *Warth*, 422 U.S. at 500.

This case exemplifies the problems with associational standing. The Chamber has 300,000 members and represents the interests of 3 million businesses. ROA.870. That vast number includes a wide variety of businesses including small businesses, global corporations, and other chambers of commerce which have their own membership. Virtually any rule bearing on business operations is bound to affect at least one of those members. Associational standing accordingly provides a means for the Chamber to impermissibly use the judiciary and this proceeding for its own purpose. *See Hollingsworth*, 570 U.S. at 707. This case puts this point on sharp display. The Chamber has not alleged that all or even a majority of its members face injury. ROA.873-74. It specifies injury to only three of its 300,000 members.

The conflict with Article III is magnified where legal action is taken without regard to any conflicts of interest with other members. "Conflicts of interest among an organization's members can interfere with the organization's ability to represent its members' rights in an associational standing suit." Michael Morley & F. Andrew Hessick, *Against Associational Standing*, 91 U. CHI. L. REV. 1539, 1577 (2024) (citation omitted). The conflict is evident here. The Chamber's diverse members all have differing interests, and many have strong reasons to oppose non-compete clauses. It speaks volumes that only three of its 300,000 members — .00001% of its membership — have voiced their views on the Rule. *See* ROA.3732-38; ROA.3740-48; ROA.3750-57. The Chamber has sought a nationwide injunction on behalf of all of its members without the slightest acknowledgment that many of its members would benefit from the Rule.

The current state of law permits an association to maintain standing even where, as in this case, it alleges no direct injury to itself but relies exclusively on abstract injury which is not connected to any "real controversy with real impact on real persons[.]" *Am. Legion,* 588 U.S. at 87 (Gorsuch & Thomas, JJ., concurring). But associational standing has long been criticized — even by the courts that accept it. For example, in the Supreme Court's 1986 decision in *International Union v. Brock*, Justice Marshall — a decided proponent of

associational standing — acknowledged that an association "might prove an inadequate representative of its members' legal interests[,]" because, among other reasons, "the litigation strategy selected by the association might reflect the views of only a bare majority — or even an influential minority — of the full membership." 477 U.S. 274, 289 (1986). Problematically, in that case, the union presented "no information as to how many members" were injured by the challenged interpretation of the Trade Act, or how many even benefitted. *Id.* at 296 (Powell, J., dissenting).

Justice Marshall's acknowledgement of the problems inherent to associational standing went further. He explained that the Court should consider how to handle a situation where an "association [is] deficient" in its ability to "represent adequately the interests of all [its] injured members." *Id.* at 290. Justice Marshall's concern was that an association seeking to vindicate the rights of a small handful of members might not have an adequate motivation for doing so. *Id.* at 290. These same concerns — expressed more than 35 years ago — become more acute when an association takes legal action in direct contravention to some portion of its members' interests.

Later decisions, concurrences, dissents, and legal commentary have expressed increasing skepticism about whether this type of "derived" standing is proper. Without "concrete" and "particularized" injury, granting associations standing "based purely upon a member's injury, not its own" undermines the basic tenets of Article III. *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 399 (2024) (Thomas, J., concurring).

Associational standing also conflicts with Article III's redressability requirements. The Final Judgment here exemplifies the tension between this sort of standing and "Article III redressability rules because it creates an inherent mismatch between the plaintiff and the remedy." *Ass'n of Am. Physicians & Surgeons v. Food & Drug Admin.*, 13 F.4th 531, 540 (6th Cir. 2021); *see also Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 202 (2000) (Scalia, J. dissenting) (noting the irreconcilable mismatch between an alleged injury and the remedy sought). Article III judicial power "exists only to redress or otherwise protect against injury to the *complaining party*[.]" *Warth*, 422 U.S. at 499 (emphasis added). It is an "irreducible constitutional minimum" of Article III standing that a plaintiff's requested relief addresses his or her injury. *See Lujan*, 504 U.S. at 560-61; *Ass'n of Am. Physicians & Surgeons*, 13 F.4th at 539-40 (questioning how any relief can satisfy Article III's redressability requirement

in associational standing cases if an association has not been injured and the allegedly injured members are not parties).

Recognizing these conflicts, Justice Thomas explained that when an association's members are not parties to the suit, "it is questionable whether 'relief to th[ose] nonparties exceeds constitutional bounds.'" *All. for Hippocratic Med.*, 602 U.S. at 400 (Thomas, J., concurring) (alterations omitted) (quoting *Ass'n of Am. Physicians & Surgeons*, 13 F.4th at 540). This same constitutional concern arises when the relief granted binds non-party association members who oppose the association's action. In either case, any relief in associational standing cases may impermissibly "'depend[] on the unfettered choices" of an association who claims injury on behalf of its members. *See Lujan*, 504 U.S. at 562 (quoting *ASARCO Inc. v. Kadish*, 490 U.S. 605, 615 (1989)). Thus, associational standing, like that asserted by the Chamber, violates Article III's standing requirements.

## III. OTHER CONCERNS WEIGH AGAINST ASSOCIATIONAL STANDING

Even if the Chamber's assertion of associational standing comports with Article III, other concerns weigh against associational standing in this case. Put simply, just because a court may find that Article III standing could exist, there are other considerations to be weighed. Courts apply limitations on standing where,

14

for example, a litigant comes forward to invoke the rights of another, as the Chamber does here. In *United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544 (1996), for example, the Supreme Court held that, even if an association satisfies Article III requirements, prudence counsels against granting standing if the claim asserted or the relief requested "requires the participation of individual members" of the association in the lawsuit. *Id.* at 546 (quoting *Hunt v. Wash. State Apple Advert. Comm'n,* 432 U.S. 333, 343 (1977)).

Further, application of such limitations on standing should result in rejection of associational standing where members have conflicting interests. The judiciary is a forum for plaintiffs to vindicate their interests, and an association should not be permitted to assert the rights of those who may be harmed if the association prevails. This limitation in the face of conflicts is prudent and is particularly important where, as here, the suit seeks nationwide relief that will necessarily negatively affect members opposed to the suit or the relief requested.

Limitation of standing here is also supported by the fact there is another mechanism for collective litigation, namely, class actions under Federal Rule of Civil Procedure 23. Notably, Rule 23 expressly prohibits representation where there are conflicts of interest among the group. Rule 23 requires a putative

class to satisfy several rigorous substantive and procedural requirements for establishing the class, representing the class, and settling the action. *See* Morley & Hessick, 91 U. CHI. L. REV. at 1572-73. Under Rule 23, the court must ensure that the representative party "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Rule 23 also requires a showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).

Associational standing provides an end-around of Rule 23's requirements by "effectively allow[ing] an association to present a court with a pre-formed class that neither satisfies Rule 23's substantive requirements for a class action nor is certified through the Rule's procedures." Morley & Hessick, 91 U. CHI. L. REV. at 1573 (citing Aaron-Andrew P. Bruhl, *One Good Plaintiff is Not Enough*, 67 DUKE L.J. 481, 538 n.255 (2017)). Rule 23 prevents the specter of "conflicts of interests within the plaintiff group" against which associational standing has no safeguards. Morley & Hessick, 91 U. CHI. L. REV. at 1576.  "A challenged legal provision might impact members of an organization in different ways: a provision that hurts some members may not affect others members, or may even benefit some members." *Id.* (citations omitted).

Other Circuits have recognized that "where the litigation would result in 'profound' conflicts of interest" among an association's members, associational standing is inappropriate. *Ret. Chicago Police Ass'n v. City of Chicago*, 76 F.3d 856, 864 (7th Cir. 1996) (citation omitted); *see also Sea Shore Corp. v. Sullivan*, 158 F.3d 51, 56 n.7 (1st Cir. 1998) (discussing circuit split). The Seventh Circuit has cautioned that "a profound conflict arises where the association's suit, if successful, would cause a direct detriment to the interests of some of its members[.]" *Ret. Chicago Police Ass'n*, 76 F.3d at 864 (citation omitted).

The possible conflicts of interest are acute in this case. The Chamber has put forward statements by just three of its 300,000 members claiming that they were injured by and oppose the Rule. ROA.3732-38; ROA.3740-48; ROA.3750-57. The Chamber did not present the District Court with any information about how the other 299,997 members view the Rule. The Chamber even "disclaimed any interest to demonstrate the relevant indicia of [its] membership[.]" *See* Dkt.41 at 19 (FTC Appeal Brief).

NYU Langone has experienced firsthand the problems that arise when an association purports to assert legal authority on its behalf of its members. NYU Langone supported the Rule dating back to the comment period when it submitted

its letter comment. But the American Hospitals Association submitted an amicus brief at the District Court opposing the Rule. ROA.3904-4930. The AHA did not consult with its member NYU Langone, or, to its knowledge, any of the AHA's members prior to submitting its amicus brief. NYU Langone was thus compelled to come forward to express its own position which directly contradicts an association of which it is a member. The FTC's Non-Compete Clause Rule is so important to NYU Langone Health that it has expended its own resources to support it, including submitting its own amicus briefs at the District Court in this case as well as at the Eleventh Circuit Court of Appeals. The Chamber should not be permitted to claim the mantle of representing all of its members while taking a position that undermines the interests of so many of them.

## **<u>CONCLUSION</u>**

For the foregoing reasons, amicus curiae NYU Langone Health supports the appeal of the Federal Trade Commission.

Dated:      January 8, 2025

**_Attorneys for NYU Langone Health_**

HODGSON RUSS LLP

By:  s/Jodyann Galvin
Jodyann Galvin
NY Bar No. 2948412
Cynthia Giganti Ludwig
NY Bar No. 4272555
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, NY  14202-4040
716.856.4000

and

Meagan Martin Powers
TX Bar No. 24050997
MARTIN POWERS & COUNSEL, PLLC
1431 Greenway Drive, Suite 950
Irving, Texas 75038
214.612.6471

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of the Federal Rule of Appellate Procedure 29(a)(5) because it contains 3,578 words. This brief also complies with the typeface and type-style requirements of the Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6), because it was prepared using Word for Microsoft 365 in Times New Roman 14-point font, a proportionally spaced typeface.

s/Jodyann Galvin

Jodyann Galvin

**CERTIFICATE OF SERVICE**

I hereby certify that I caused this document to be electronically filed with the Clerk of the Court using the appellate CM/ECF system on January 8, 2025. Participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

s/Jodyann Galvin
Jodyann Galvin