No. 24-10951

# In The United States Court of Appeals for the Fifth Circuit

RYAN, L.L.C.,
*Plaintiff-Appellee,*

CHAMBER OF COMMERCE OF THE UNITED STATES
OF AMERICA; BUSINESS ROUNDTABLE; TEXAS ASSOCIATION
OF BUSINESS; LONGVIEW CHAMBER OF COMMERCE,
*Intervenor Plaintiffs-Appellees,*

v.

FEDERAL TRADE COMMISSION,
*Defendant-Appellant.*

On Appeal from the United States District Court
for the Northern District of Texas

**BRIEF FOR AMERICAN ECONOMIC LIBERTIES PROJECT
AS *AMICUS CURIAE* IN SUPPORT OF RESPONDENTS**

Lee A. Hepner
Laurel Kilgour
AMERICAN ECONOMIC LIBERTIES PROJECT
2001 Pennsylvania Avenue NW, Suite 540
Washington, DC 20006
LHepner@economicliberties.us

*Counsel for Amicus Curiae*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 of the Fifth Circuit's Rules and Internal Operating Procedures—in addition to the persons listed on the certificates of interested persons submitted by Plaintiff-Appellee Ryan, LLC; Intervenor Plaintiffs-Appellees Chamber of Commerce of the United States, of America, Business Roundtable, Texas Association of Business, and Longview Chamber of Commerce; Defendant-Appellant Federal Trade Commission; and the various *amici curiae*— have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. American Economic Liberties Project, *Amicus Curiae*

Dated: January 9, 2025

*s/ Lee A. Hepner*
Lee A. Hepner
Laurel Kilgour
American Economic Liberties Project
2001 Pennsylvania Avenue NW
Suite 540
Washington, DC 20006
LHepner@economicliberties.us

Counsel for *Amicus Curiae*

# TABLE OF CONTENTS

INTEREST OF AMICUS CURIAE ............................................................. 1

INTRODUCTION AND SUMMARY OF ARGUMENT ........................... 3

ARGUMENT .......................................................................................... 8

    I.    The Supreme Court's Recent Decisions Confirm the Administrative Procedure Act Does Not Permit Universal Relief as a Default. ................................................ 8

        A.  The APA must be read consistent with the traditional equitable role of federal courts to issue relief focused on parties. ...................................................... 8

        B.  Article III concerns further preclude universal vacatur as the default remedy in APA suits. ............................. 17

    II.   A Default Remedy of Universal Vacatur Is Inconsistent With Constitutional and Statutory Means of Dispute Resolution. ....................................................................... 22

        A.  Universal vacatur supplants private economic ordering by displacing entire categories of litigation. ......................... 23

        B.  Universal vacatur displaces the judgments of sister courts and the undermines the comity among courts. ......... 27

        C.  Universal vacatur displaces Congress's judgment to enact mechanisms that resolve nationwide concerns. ................... 30

CONCLUSION ...................................................................................... 35

CERTIFICATE OF COMPLIANCE ...................................................... 37

CERTIFICATE OF SERVICE ............................................................... 37

# TABLE OF AUTHORITIES

## United States Supreme Court Cases

*Adkins v. Children's Hosp. of D.C.*, 261 U.S. 525 (1923) ................... 15

*Arizona v. City & Cty. of San Francisco, California*, 596 U.S. 763, 765 (2022) (Roberts, C.J., with Thomas, Alito, Gorsuch, JJ., concurring in the judgment) .................................................... 33

*Bowsher v. Synar*, 478 U.S. 714 (1986) .............................................. 22

*Califano v. Yamasaki*, 442 U.S. 682 (1979) ....................................... 12

*Chicago, R.I. & P. Ry. Co. v. United States*, 284 U.S. 80 (1931) ........ 31

*Columbia Broad. Sys., Inc. v. United States*, 316 U.S. 407 (1942) ....................................................................... 5, 8

*Commonwealth of Massachusetts v. Mellon*, 262 U.S. 447 (1923) ..... 15

*Corner Post, Inc. v. Board of Governors of the Federal Reserve System,* 603 U.S. 799 (2024) .................................................... passim

*Food & Drug Administration v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024) ................................................. passim

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999) ..................................................................... 8

*Hansberry v. Lee*, 311 U.S. 32 (1940) ................................................ 23

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944) ............................................................................ 9

*Hecht Co. v. Bowles,* 321 U.S. 321 (1944) ......................................... 11

*Holland v. Florida*, 560 U.S. 631 (2010) .............................................. 8

*Holmberg v. Armbrecht*, 327 U.S. 392 (1946) ...................................... 8

*Labrador v. Poe*, 144 S. Ct. 921 (2024)..................................................12

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) ...................34

*Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753 (1994)..............5, 8

*Murthy v. Missouri*, 603 U.S. 43 (2024) ...................................passim

*NLRB v. Noel Canning*, 573 U.S. 513 (2014)......................................22

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) ................................24

*Panama Refining Co. v. Ryan*, 293 U.S. 288 (1935)...........................15

*Richards v. Jefferson Cty.*, 517 U.S. 793 (1996) ................................24

*Seila Law LLC v. CFPB*, 591 U.S. 197 (2020) ....................................22

*Spokeo, Inc. v. Robins,* 578 U.S. 330 (2016)........................................25

*Starbucks Corp. v. McKinney*, 602 U.S. 339 (2024)............ 4, 10, 11, 12

*Taylor v. Sturgell*, 553 U.S. 880 (2008)...............................................23

*TransUnion LLC v. Ramirez*, 549 U.S. 413 (2021)...................6, 18, 19

*Trump v. Hawaii*, 585 U.S. 667 (2018) (Thomas, J., concurring
    in the judgment) ............................................................................25

*United States v. Baltimore & O. R. Co.*, 293 U.S. 454 (1935) ............31

*United States v. Texas*, 599 U.S. 670 (2023) (Gorsuch, J., with
    Thomas and Barrett, JJ., concurring in judgment)............... passim

*Winter v. Nat. Res. Def. Coun.*, 555 U.S. 7 (2008) ..............................11

*Zenith Radio Corp. v. Hazeltine Research, Inc.* 395 U.S. 100
    (1969) ..............................................................................................23

**Fifth Circuit Cases**

*Braidwood Management, Inc. v. Becerra,*
104 F.4th 930 (5th Cir. 2024)..................................................... passim

*Career Colleges & Sch. of Texas v. U.S. Dep't of Educ.,*
98 F.4th 220 (5th Cir. 2024)............................................. 9

*Cargill v. Garland,* 57 F.4th 447 (5th Cir. 2024).............................. 19

*Data Mktg. P'ship, LP v. U.S. Dep't of Labor,*
45 F.4th 846 (5th Cir. 2022)............................................. 9

*In re Clarke,* 94 F.4th 502 (5th Cir. 2024).................................. 9, 10, 20

*Texas Med. Ass'n v. U.S. Dep't of Health & Human Servs.,*
120 F.4th 494 (5th Cir. 2024)............................................. 4, 10, 19

*Texas v. Dep't of Labor,* 929 F.3d 205 (5th Cir. 2019) .................. 23, 26

*Texas v. United States,* 50 F.4th 498 (5th Cir. 2022) ....................... 20

*Texas v. United States,* 809 F.3d 134 (5th Cir. 2015)........................ 22

**Other Cases**

*Arizona v. Biden,* 40 F.4th 375 (6th Cir. 2022) (Sutton, C.J.,
concurring)...................................................................... 29

*ATS Tree Servs., LLC v. FTC,* 2:24-cv-1743, 2024 WL 3511630
(E.D. Pa. July 23, 2024) .................................................. 27

*Cigar Ass'n of Am. v. FDA,* No. 16-cv-1460, 2023 WL 5094869
(D.D.C. Aug. 9, 2023)...................................................... 22

*Harlem Valley Transp. Ass'n v. Stafford,* 360 F. Supp. 1057
(S.D.N.Y. 1973) ............................................................ 15

*Kentucky v. Biden,* 57 F.4th 545 (6th Cir. 2023) ............................. 7

*Properties of the Villages, Inc. v. FTC*, No. 5:24-cv-315,
2024 WL 3870380 (M.D. Fla. Aug. 15, 2024) ................................. 28

*Ryan, LLC v. FTC*, No. 3:24-cv-986, 2024 WL 3879954
(N.D. Tex. Aug. 20, 2024) ................................................. 3, 10, 12, 22

*Wirz v. Baldor Elec. Co.*, 227 F.2d 518 (D.C. Cir. 1963) .................... 15

## Statutes

5 U.S.C. § 706 ................................................................................. 2, 3

## Regulations and Related Materials

Non-Compete Clause Rule,
89 Fed. Reg. 38,342 (May 7, 2024) ................................. 2, 24, 25, 27

Small Business Majority,
Comment ID FTC-2023-0007-21093 ...................................... 24, 25

## Constitutional Provisions

U.S. Const. art. III, § 1 ............................................................ 17, 19, 21

## Articles

Aditya Bamzai, *The Path of Administrative Law Remedies*,
98 Notre Dame L. Rev. 2037 (2023) ................................................. 16

Alisa B. Klein, *The Judicial Restraint Trilogy: Why the
Supreme Court's Decisions from Last Term Offer New Hope
for Remedial Discipline,*
47 Campbell L. Rev. (forthcoming) ...................................... 4, 19, 31

Alisa Klein, *Major Questions Jujitsu*,
76 Admin L. Rev. 327 (2024) .......................................................... 23

Amy Coney Barrett, *Stare Decisis and Due Process*,
74 U. Colo. L. Rev. 1011 (2003) ..................................................... 30

Ann Woolhandler & Caleb Nelson, *Does History Defeat Standing Doctrine*, 102 Mich. L. Rev. 689 (2004) .......................... 26

John Harrison, *Vacatur of Rules Under the Administrative Procedure Act*, 40 Yale J. on Regul. Bull. 119 (2023) ................... 16

Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933 (2018) ............................................................... 20

Samuel L. Bray & William Baude, *Proper Parties, Proper Relief*, 137 Harv. L. Rev. 153 (2023) .......................................... 16

Samuel L. Bray, *Multiple Chancellors: Reforming the National Injunction*, 131 Harv. L. Rev. 417 (2017) ............................. passim

The Federalist No. 51 (J. Cooke ed. 1961) .......................................... 22

## INTEREST OF AMICUS CURIAE

*Amicus curiae* American Economic Liberties Project ("AELP") is an independent nonprofit organization that works to promote competition, combat monopolistic corporations, and advance economic liberty for all.[1] AELP organizes and employs a diverse set of leading policy experts in areas impacted by concentrated power that include community development, the airline industry, healthcare, international trade, national security, and small business entrepreneurship. It advocates for policies that address today's crisis of concentration through legislative efforts and public policy debates. AELP supports the rule at issue in this case, which promotes competition by banning noncompete clauses in many employment contracts.

AELP submits this *amicus* brief to address the district court's universal remedy, which purports to deprive millions of small businesses and other nonparties of their rights under the Federal Trade Commission's Non-Compete Clause Rule (the "Non-Compete Clause

---

[1] https://www.economicliberties.us/

1

Rule").[2] This *amicus* brief shows that the district court's interpretation of the "set aside" language in § 706(2) of the Administrative Procedure Act (APA)[3] as authorizing a default remedy of universal vacatur cannot be reconciled with recent Supreme Court decisions that this Court has not yet addressed. Those recent Supreme Court decisions require this Court to reconsider the dicta from *Braidwood Management, Inc. v. Becerra*, 104 F.4th 930 (5th Cir. 2024), on which the district court relied.

All parties consent to the filing of this *amicus* brief. No counsel for a party has authored this brief in whole or in part, and no party, party's counsel, or any other person—other than *amicus curiae* or its counsel—has contributed money that was intended to fund preparing or submitting this brief.

---

[2] Federal Trade Commission (FTC) Non-Compete Clause Rule, 89 Fed. Reg. 38,342 (May 7, 2024).

[3] 5 U.S.C. § 706

## INTRODUCTION AND SUMMARY OF ARGUMENT

The U.S. District Court for the Northern District of Texas universally vacated the Federal Trade Commission's Non-Compete Rule (16 C.F.R. §§ 910.1-910.6) based on a belief that "the [Administrative Procedure Act] does not contemplate party-specific relief."[4] Quoting this Court's dicta in *Braidwood Management, Inc. v. Becerra*, 104 F.4th 930 (5th Cir. 2024), the district court opined that "setting aside agency action under § 706 [of the APA] has 'nationwide effect,' is 'not party-restricted,' and 'affects persons in all judicial districts equally.'"[5] The district court thus treated universal relief as mandatory.[6]

We agree with the FTC's position (Br. at 47-54) that the district court "erred in ordering universal vacatur of the Rule without considering equitable principles." As the FTC explains (Br. at 49), the district court's position is fatally inconsistent with this Court's

---

[4] *Ryan, LLC v. FTC*, No. 3:24-cv-986, 2024 WL 3879954, at *14 (N.D. Tex. Aug. 20, 2024).

[5] *Id.* (quoting *Braidwood*, 104 F.4th at 951 (internal citations omitted)).

[6] *See id.*

recognition that, in an APA action, "party-specific vacatur is definitely appropriate in [some] situations."[7]

We elaborate here on why recent Supreme Court precedents require this Court to repudiate its language in *Braidwood* and like decisions that treat universal vacatur as a default. In *Braidwood*, the scope of an APA remedy was not at issue, because the Court held that there was no APA claim in the first place.[8] And as administrative law scholar Alisa Klein explains, this dicta cannot be reconciled with recent Supreme Court decisions that this Court has never addressed.[9]

First, treating universal vacatur as a required or default remedy is inconsistent with the Supreme Court's decision in *Starbucks Corp. v. McKinney*,[10] which held that a statute's grant of authority for federal courts to issue equitable relief must be interpreted to carry forward traditional principles of equity. That Court has long held that a judicial

---

[7] *Texas Med. Ass'n v. U.S. Dep't of Health & Human Servs.*, 120 F.4th 494, 510 (5th Cir. 2024).

[8] *Braidwood*, 104 F.4th at 952–53.

[9] Alisa B. Klein, *The Judicial Restraint Trilogy: Why the Supreme Court's Decisions from Last Term Offer New Hope for Remedial Discipline,* 47 Campbell L. Rev. (forthcoming), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4914940.

[10] 602 U.S. 339 (2024).

"proceeding to set aside" agency action "is a plenary suit in equity."[11] It is a traditional principle of equity that relief may be no broader than "necessary to provide complete relief to the plaintiffs."[12] That principle applies even when the plaintiff in an APA case challenges a rule on a legal theory that implicates the rule's application to nonparties. Indeed, in *Corner Post, Inc. v. Board of Governors of the Federal Reserve System*, the Court concluded that the APA's "cause of action" is "plaintiff specific" regardless of whether the plaintiff challenges a rule on its face.[13] Even assuming the APA authorizes district courts to vacate agency rules, there is no canon of statutory interpretation that suggests *universal* vacatur is a required or default remedy.

Furthermore, the Supreme Court's recent decisions in *Food & Drug Administration v. Alliance for Hippocratic Medicine*[14] and *Murthy v. Missouri*[15] show that treating universal vacatur as a required or default remedy cannot be reconciled with Article III's "case or controversy"

---

[11] *Columbia Broad. Sys., Inc. v. United States*, 316 U.S. 407, 415 (1942) ("*CBS*").

[12] *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994).

[13] 603 U.S. 799, 818 n.5 (2024) (emphasis omitted).

[14] 602 U.S. 367 (2024).

[15] 603 U.S. 43 (2024).

requirement. Writing for the Court in *Alliance for Hippocratic Medicine*, Justice Kavanaugh emphasized that Article III did not establish standing to sue for a plaintiff concerned with the impact of the rule *on others*.[16] Writing for the Court in *Murthy*, Justice Barrett explained that "'plaintiffs must demonstrate standing for each claim that they press' against each defendant, *'and for each form of relief that they seek.'*"[17] Together, these decisions show that a plaintiff's standing to seek plaintiff-specific relief cannot alone justify a universal remedy.

Although the Supreme Court has not yet addressed the availability of a universal vacatur remedy under the APA, a plurality of its members has treated the universal vacatur remedy with deep skepticism. The nature of the remedy is to extinguish the rights of nonparties, including nonparties who do not wish for the "benefit" of vacatur—as in the instant case. Universal vacatur disrupts the principle of comity between courts, including where—as here—sister district courts have upheld the rule or resisted universal vacatur by issuing party-specific relief. Furthermore,

---

[16] 602 U.S. at 385.

[17] 604 U.S. at 61 (quoting *TransUnion LLC v. Ramirez*, 549 U.S. 413, 431 (2021)) (emphasis added).

universal vacatur supplants joinder and class action procedures, themselves the result of statutory authorization. Finally, universal vacatur improperly casts the judiciary in the role of policymaker, straining the Nation's separation of powers.

Not allowing for a remedy of universal vacatur does not leave plaintiffs without relief and is instead consistent with the supremacy of the Supreme Court and the separation of powers under the Constitution. At a minimum, "courts of appeals must do their part, too, asking whether party-specific relief can adequately protect the plaintiff's interests," [18] as it can in the instant case. "If so, an appellate court should not hesitate to hold that broader relief is an abuse of discretion."[19]

---

[18] *United States v. Texas*, 599 U.S. 670, 703 (2023) (Gorsuch, J., with Thomas & Barrett, JJ., concurring in the judgment) (citing *Kentucky v. Biden*, 57 F.4th 545, 556-57 (6th Cir. 2023)).

[19] *Id.*

# ARGUMENT

## I. The Supreme Court's Recent Decisions Confirm the Administrative Procedure Act Does Not Permit Universal Relief as a Default.

### A. The APA must be read consistent with the traditional equitable role of federal courts to issue relief focused on parties.

**1.** The Supreme Court has long recognized that the remedial power of federal courts must be guided by their traditional equitable role. Federal courts have "no authority" to issue "a remedy [that] was historically unavailable from a court of equity."[20] For that reason, relief must be no broader than "necessary to provide complete relief to the plaintiffs"—a principle that would all but preclude the universal relief issued here.[21]

The Supreme Court has long held that a judicial "proceeding to set aside" agency action "is a plenary suit in equity."[22] The traditional equitable role of federal courts in fashioning relief "emphasiz[es] the

---

[20] *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 333 (1999).

[21] *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994).

[22] *CBS*, 316 U.S. at 415.

need for 'flexibility'" rather than "mechanical rules."[23] When it comes to the proper remedy, "absolute legal rules ... threaten the 'evils of archaic rigidity.'"[24]

The district court departed from its traditional equitable role by issuing universal relief as a default matter without considering the equities. It did so based on this Court's dicta in *Braidwood* that the APA's statutory remedy of "setting aside" agency action authorizes courts to issue relief that has "'nationwide effect,' is 'not party-restricted,' and 'affects persons in all judicial districts equally.'"[25] But *Braidwood* did not even involve an APA claim, and the remedial issue was not resolved on that ground.[26] Nor was the scope of the remedy at issue in any of the decisions that *Braidwood* cited, where the Court, respectively, found the defendant had forfeited its argument against

---

[23] *Holland v. Florida*, 560 U.S. 631, 650 (2010) (quoting *Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946)).

[24] *Id.* (quoting *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 248 (1944)).

[25] *Id.* at 951 (quoting *Career Colleges & Sch. of Texas v. United States Dep't of Educ.*, 98 F.4th 220, 255 (5th Cir. 2024); *In re Clarke*, 94 F.4th 502, 512 (5th Cir. 2024)).

[26] *Braidwood*, 104 F.4th at 952–53.

vacatur,[27] addressed a separate APA provision to stay the effective date of a rule,[28] or ruled on venue.[29] And as the FTC has explained (Br. at 49), the district court's belief that "party-specific relief" is unavailable[30] is irreconcilable with this Court's recognition that "party-specific vacatur" is in some circumstances "definitely appropriate."[31]

**2.** Two of the Supreme Court's decisions from this past term—*Starbucks* and *Corner Post*—confirm that traditional equitable limits apply even to an APA suit. Federal courts' role in supplying plaintiff-centric relief thus carries forward through the APA and precludes the default universal vacatur issued here.

In *Starbucks*, the Supreme Court considered a statute granting authority to the National Labor Relations Board to issue preliminary or permanent injunctive relief that, in the Board's discretion, it deemed "just and proper."[32] Although a "just and proper" standard might have

---

[27] *Data Mktg. P'ship, LP v. U.S. Dep't of Labor*, 45 F.4th 846, 860 (5th Cir. 2022).

[28] *Career Colleges & Sch. of Texas v. U.S. Dep't of Educ.*, 98 F.4th 220, 255 (5th Cir. 2024).

[29] *In re Clarke*, 94 F.4th 502, 512 (5th Cir. 2024).

[30] *Ryan*, 2024 WL 3879954, at *14.

[31] *Texas Med. Ass'n*, 120 F.4th at 510.

[32] *Starbucks*, 602 U.S. at 347 (2024).

authorized more permissive relief than the standard adhered to by courts sitting in equity, the Court held that Congress did not intend to depart from those traditional principles of equity. In so finding, the Court upheld the prevailing four-part test that injunctive relief is an "extraordinary" equitable remedy "never awarded as of right."[33]

Notable, moreover, was the Supreme Court's reliance on a decision from eight decades ago interpreting the Emergency Price Control Act's instruction that an injunction "*shall* be granted" if the relevant federal agency was able to show that a defendant had engaged or is was about to engage in a prohibited act.[34] Despite the purportedly mandatory statutory command, the Court determined that Congress did not displace the applicability of traditional principles of equity permitting courts to deviate from a mandatory remedy.[35] The Court in *Starbucks* confirmed that even broad and mandatory statutory authorizations of relief cannot be read to "jettison the normal equitable rules."[36]

---

[33] *Winter v. Nat. Res. Def. Coun.*, 555 U.S. 7, 24 (2008).

[34] *Starbucks*, 602 U.S. at 347 (emphasis added) (citing *Hecht Co. v. Bowles,* 321 U.S. 321 (1944)).

[35] *Hecht*, 321 U.S. at 330.

[36] *Starbucks*, 602 U.S. at 347.

The fundamental principle of *Starbucks* is that even where Congress appears to require courts to issue relief that transcends traditional principles of equity, those traditional principles of equity must prevail. This principle necessarily places this Court's recent dicta on the mandatory nature of universal remedies in APA cases at odds with *Starbucks*. In *Braidwood* (which was issued just eight days after *Starbucks* and did not discuss that decision), this Court suggested that relief in APA suits need not be party-restricted.[37] But it is a venerable principle of equity that "a federal court may not issue an equitable remedy 'more burdensome to the defendant than necessary to [redress]' the plaintiff's injuries."[38] And while the district court in the instant case cited *Braidwood* for the principle that "setting aside agency action … has 'nationwide effect,'" the lower court made no attempt to reconcile that interpretation with *Starbucks*' holding that a court's remedial authority is constrained by traditional principles of equity.[39]

---

[37] *Braidwood*, 104 F.4th at 951.

[38] *Labrador v. Poe*, 144 S. Ct. 921, 923 (2024) (Gorsuch, J., concurring) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)).

[39] *Ryan*, 2024 WL 3879954, at *14.

If there were any doubt about how these principles apply to the APA, it would be removed by the Supreme Court's analysis of the APA's statutory cause of action in *Corner Post*. Though that decision decided the accrual of an APA claim and not the remedy that applied to an APA claim, the Court held that the APA "embodies the plaintiff-centric traditional rule" around when a plaintiff has a cause of action.[40] In doing so, the Court specifically rejected the argument that such suits should be considered "defendant-centric" and focused on the "finality" of the agency action if a rule is challenged on its face.[41]

*Corner Post* all but answers the question of how to interpret the APA cause of action as a default matter. In discussing the accrual of that claim, the Court necessarily opined on what it means for a plaintiff to have "the right to apply to [a] court for relief."[42] A "complete and present" APA suit is nothing more than the right of a single plaintiff to "file suit and obtain relief" for that plaintiff.[43] It follows that such an APA claim is, in almost all ordinary cases, completely resolved if that

---

[40] *Corner Post*, 603 U.S. at 813.

[41] *Id.* at 815.

[42] *Id.* at 819.

[43] *Id.* at 800.

plaintiff in fact receives personal relief. Indeed, it would be incongruous if the APA in one set of provisions was treated as a plaintiff-centric statute and in its remedial provisions was treated as a statute that focused on the agency action to be vacated.[44]

**3.** These decisions confirm the historical practice that has prevailed in this Nation's history, and that this Court should return to adopting in APA suits. Professor Stephen Bray, the "leading commentator"[45] whose 2017 study of national injunctions is cited in *Braidwood*, offers a brief history of traditional equity for the purpose of demonstrating the national injunction's *absence* from that history.[46] While courts sitting in equity would sometimes resolve a number of claims at once, or give a "bill of peace" consolidating a number of suits including common claims ("a kind of proto-class action"), never did

---

[44] *Id.* at 820.

[45] *Braidwood*, 104 F.4th at 954 n.118 ("[W]e are generally familiar—and appreciative—of all the academics who have weighed in on this important issue. But for analysis from one leading commentator, see generally Samuel L. Bray…").

[46] Samuel L. Bray, *Multiple Chancellors: Reforming the National Injunction*, 131 Harv. L. Rev. 417, 424-445 (2017)

these mechanisms resolve a question of legal interpretation "for the entire realm."[47]

Because these principles from English equity carried over into American equity, until the 1960s, national injunctions were conspicuously absent from Supreme Court jurisprudence.[48] While the Supreme Court had allowed plaintiff taxpayers to seek redress on behalf of others vis-à-vis *municipal* corporations—a form of relief analogous to the "bill of peace" precedents in English and American equity—the relationship of the individual taxpayer to the *national* government was "very different," and "no precedent sustaining the right to maintain suits like this" had been called to the Court's attention.[49]

 For the better part of two centuries, the Supreme Court refused to provide nationwide injunctive relief,[50] hewing closely to traditional principles of equity. And when lower federal courts' posture on nationwide injunctions ultimately changed, it was almost by

---

[47] *Id.* at 426.

[48] *Id.* at 427-28.

[49] *Commonwealth of Massachusetts v. Mellon*, 262 U.S. 447, 487 (1923).

[50] *See, e.g., Adkins v. Children's Hosp. of D.C.*, 261 U.S. 525 (1923); *Panama Refining Co. v. Ryan*, 293 U.S. 288 (1935).

happenstance.[51] Indeed, specifically as to the APA, Professor Bray and Professor William Baude have together written about the absence of universal vacatur as a remedy before the statute's enactment. Tellingly, no one "seems to have been aware that a new super-remedy was being created" with the APA, underscoring that Congress did not intend for federal courts to depart from their traditional role.[52] Other administrative law scholars have similarly opined that the "set aside" language—which falls in the scope-of-review and not the remedy provision of the APA—could not be read as a requirement for universal vacatur either.[53]

---

[51] *Wirz v. Baldor Elec. Co.*, 227 F.2d 518 (D.C. Cir. 1963) (citing no prior cases that offered support for the scope of the remedy and never cited again); *Harlem Valley Transp. Ass'n v. Stafford*, 360 F. Supp. 1057, 1059 (S.D.N.Y. 1973) (defendants conceding *arguendo* the availability of the national injunction remedy), *aff'd*, *Harlem Valley Transp. Ass'n. v. Stafford,* 500 F.2d 328 (2d Cir. 1974) (blurring the distinction between what the court's decree *required* the defendant to do and what the defendant *chose* to do).

[52] Samuel L. Bray & William Baude, *Proper Parties, Proper Relief*, 137 Harv. L. Rev. 153, 181 (2023).

[53] Aditya Bamzai, *The Path of Administrative Law Remedies*, 98 Notre Dame L. Rev. 2037, 2055-56 (2023); John Harrison, *Vacatur of Rules Under the Administrative Procedure Act*, 40 Yale J. on Regul. Bull. 119, 123-31 (2023).

**B.     Article III concerns further preclude universal vacatur as the default remedy in APA suits.**

**1.** In all events, issuing universal vacatur of an agency rule as a default matter in every APA challenge raises substantial Article III concerns. Once again, two Supreme Court decisions from this past term—*Alliance for Hippocratic Medicine* and *Murthy*—point the way.

The Article III concerns regarding the proper role of federal courts should at least shape whatever the default remedy is in APA suits, so that the form of relief comports with constitutional limitations. Both *Alliance* and *Murthy* illustrate that Article III's "case or controversy" requirement embeds a principle of judicial restraint, which "limits the role of the Federal Judiciary in our system of separated powers."[54] Article III gives the federal courts the "judicial Power,"[55] which is a power to decide cases for parties, not questions for everyone.[56]

In *Alliance,* the Supreme Court specifically limited the ability of plaintiffs to sue, and thus obtain relief, on behalf of others. There, various plaintiff doctors and associations sued the Food and Drug

---

[54] *Alliance*, 602 U.S. at 378.

[55] U.S. Const. art. III, § 1.

[56] Bray, *Multiple Chancellors, supra*, at 421.

Administration under the APA when the FDA relaxed its regulatory requirements for mifepristone, an abortion drug.[57] Writing for the majority, and without reaching the merits of the APA claim, Justice Kavanaugh emphasized that Article III did not establish standing to sue for a plaintiff concerned with the impact of the rule *on others*.[58] "Under Article III of the Constitution, a plaintiff's desire to make a drug less available *for others* does not establish standing to sue."[59]

In *Murthy*, the Supreme Court went one step further and recognized that these same Article III concerns affect the scope of permissible relief. There, plaintiff States and social media users sought and successfully obtained from this Court a "sweeping" injunction against Executive Branch officials and agencies who had allegedly pressured social media platforms to suppress protected speech in violation of the First Amendment.[60] Ruling again on standing grounds, Justice Barrett wrote that "plaintiffs must demonstrate standing for

---

[57] *Alliance*, 602 U.S. at 372.

[58] *Id.*

[59] *Id.*

[60] *Murthy*, 603 U.S. at 49 (emphasis added) (quotation omitted).

18

each claim that they press against each defendant, *and for each form of relief that they seek.*"[61]

Read together, *Alliance* and *Murthy* stand for the premise that Article III requires a plaintiff who seeks a remedy for nonparties to specifically have standing to seek that relief for others—standing that they ordinarily do not have. It is thus not enough that a plaintiff has standing to seek relief for herself. The further branch of *universal* relief against a rule means that the plaintiff must somehow have a stake in the remedy being applied to all nonparties that the rule might affect. These basic principles do not allow a federal court to treat universal vacatur as the "'default' remedy."[62] Such standing to seek relief is "not dispensed in gross."[63] Instead, a district court must tailor the remedy to redress the plaintiff's injuries.[64]

**2.** Universal vacatur as a default is all the more inappropriate under Article III's limitations because the remedy of vacatur can be tailored to the present parties. As this Court has recognized, "party-

---

[61] *Id.* at 61 (quoting *TransUnion LLC v. Ramirez*, 549 U.S. 413, 431 (2021)).

[62] *Braidwood*, 104 F.4th at 952.

[63] *TransUnion*, 549 U.S. at 431.

[64] Klein, *Judicial Restraint*, *supra*, at 28.

specific vacatur is definitely appropriate in [some] situations."[65] The *en banc* Court has thus opined that "a more limited remedy" that is "'tailored to redress the plaintiff's particular injury'" may at times be appropriate.[66] And this Court has balanced a variety of equitable considerations in determining whether universal relief is warranted.[67]

Indeed, even the authorities relied on by this Court to opine on universal relief have also advised how a narrower remedy is available. For instance, Jonathan F. Mitchell's *The Writ-of-Erasure Fallacy* article[68] argues that the APA's text authorizes the remedy of vacatur but emphasizes that this "does not resolve whether courts should extend relief *beyond the named litigants*."[69] As Mitchell writes, whether a court *should* sever an agency action … depends, once again, on the law of severability and remedies, and not on the fact that the APA commands reviewing courts to 'set aside' the agency's rule or order."[70]

---

[65] *Texas Med. Ass'n*, 120 F.4th at 510.

[66] *Cargill v. Garland*, 57 F.4th 447, 472 (5th Cir. 2024) (en banc) (plurality opinion) (citation omitted), *aff'd*, 602 U.S. 406 (2024).

[67] *Texas v. United States*, 50 F.4th 498, 530 (5th Cir. 2022).

[68] *In re Clarke*, 94 F.4th at 512 (citing Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933 (2018))

[69] Mitchell, *Writ-of-Erasure Fallacy*, *supra*, at 1014 (emphasis added).

[70] *Id.*

In short, "[a]gency actions, like statutes, may be severable as applied to individuals."[71]

If party-specific vacatur is an available remedy under the APA, nothing in the statute could possibly require federal courts to transgress Article III by requiring *universal* relief as a default measure. Instead, the Court should engage in a careful analysis of whether it is more appropriate to issue relief only as to the particular plaintiffs that have brought suit, as opposed to relief for all nonparties as well. In light of the limitations on nonparty relief embedded in Article III and traditional equitable principles, the answer to that question will in most ordinary cases be that remedying only a plaintiff's injuries is the appropriate route.

Granting nonparty relief should be no simple endeavor. As Professor Bray has summarized, when courts want to grant injunctions that go beyond protecting plaintiffs, they have pointed to the extent of the violation, the permissibility of injunctions benefiting nonparties, the impracticality of giving an injunction benefiting only the plaintiffs, and

_____

[71] *Id.*

the need for complete relief to the plaintiffs.[72] In short, federal courts consider the equities.

That analysis is conspicuously absent from the district court's decision in the current case, which, in treating universal vacatur as the default,[73] represents a full swing of the pendulum away from traditional principles of equity and from Article III. As this Court has done in other cases, the district court should have considered whether these were the "appropriate circumstances" for such universal relief.[74] At a minimum, this Court should remand for the district court to exercise its equitable discretion in the first instance.[75]

## II. A Default Remedy of Universal Vacatur Is Inconsistent With Constitutional and Statutory Means of Dispute Resolution.

---

[72] Bray, *Multiple Chancellors*, *supra*, at 144.

[73] *Ryan*, 2024 WL 3879954, at *14 (noting only that "the APA does not contemplate party-specific relief").

[74] *Texas v. United States*, 809 F.3d 134, 188 (5th Cir. 2015) (preliminary injunction against Deferred Action for Parents of Americans and Lawful Permanent Residents).

[75] *See, e.g.*, *Cigar Ass'n of Am. v. FDA*, No. 16-cv-1460, 2023 WL 5094869, at *2 (D.D.C. Aug. 9, 2023) (vacating rule only as it applies to certain regulated items).

The historical role of federal courts and Article III limitations on their powers "serve to safeguard individual liberty."[76] Any "'gradual concentration' of power in the same hands" of one branch bypasses the "structural protections against abuse of power [that are] critical to preserving liberty."[77] By contrast, the remedy of universal vacatur enables individual judges to assume the role of "super-legislator," displacing other private litigation and the prerogatives of the Supreme Court, the courts of appeals, and other district court judges.[78] And unlike other statutory mechanisms for effecting mass resolution, including Rule 23 class actions, universal vacatur places federal courts in the position of adjudicating the rights of nonparties without their consent.

## A. Universal vacatur supplants private economic ordering by displacing entire categories of litigation.

A critical component of this nation's constitutional liberties is the ability of individuals to privately engage in social and economic

---

[76] *NLRB v. Noel Canning*, 573 U.S. 513, 525 (2014).

[77] *Seila Law LLC v. CFPB*, 591 U.S. 197, 223 (2020) (quoting The Federalist No. 51, at 349 (J. Cooke ed. 1961) (Madison) and *Bowsher v. Synar*, 478 U.S. 714, 730 (1986)).

[78] Alisa Klein, *Major Questions Jujitsu*, 76 Admin L. Rev. 327, 362-363 (2024), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4630449.

ordering. It is "a principle of general application … that one is not bound by a judgment *in personam* in litigation in which he is not designated as a party or to which he has not been made a party by service of process."[79] That principle is rooted in "our deep-rooted historic tradition that everyone should have his own day in court."[80] As a consequence, a "judgment or decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings."[81]

The remedy of universal vacatur, by contrast, serves to extinguish the rights of nonparties, including small businesses who would seek to avail themselves of the Non-Compete Clause Rule, but instead find their rights restrained by a proceeding where they had little (if any) opportunity to intervene. A survey conducted by Small Business Majority, a national organization representing a network of more than 85,000 small businesses and dedicated to the promotion of inclusive

---

[79] *Texas v. Dep't of Labor*, 929 F.3d 205, 210 (5th Cir. 2019) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 884 (2008) (quoting *Hansberry v. Lee*, 311 U.S. 32, 40 (1940)); *see also Zenith Radio Corp. v. Hazeltine Research, Inc.* 395 U.S. 100, 110 (1969) (same).

[80] *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 846 (1999) (citation omitted).

[81] *Richards v. Jefferson Cty.*, 517 U.S. 793, 798 (1996).

small business growth, illustrates the breadth of nonparty business owners affected by the lower court's universal vacatur order: 59% of small business owner respondents expressed support for the FTC's proposed rule, with only 14% opposed.[82] Moreover, 46% of respondents reported having been subject to a non-compete agreement that prevented them from starting or expanding their business, and 35% reported they had been prevented from hiring due to a prospective employee's non-compete clause.[83]

Universal vacatur of the FTC's Non-Compete Rule impermissibly undermines the rights of small businesses and others who did not want the "benefit" of the district court's vacatur. Such nonparties should be free to invoke the Non-Compete Clause Rule in other litigation. A district court decision does not establish binding precedent even in the same court. And while some district court judges "may think efficiency and uniformity favor the broadest possible relief," "there are serious countervailing considerations," including the risk of "sweep[ing] up

---

[82] Small Business Majority, Comment ID FTC-2023-0007-21093, https://www.regulations.gov/comment/FTC-2023-0007-21093

[83] *Id.*

nonparties who may not wish to receive the benefit of the court's decision."[84] When a district court does so, it contravenes the "judiciary's limited role" as reflected in "decisions about who could sue to vindicate certain rights."[85] Consistent with "American courts' tradition of providing equitable relief only to parties," "a plaintiff could not sue to vindicate the private rights of someone else… Such claims were considered to be beyond the authority of courts."[86]

This Court has elsewhere recognized the limitations of a district court's authority to bind nonparties in the context of challenges brought under the APA. In *Texas v. Dep't of Labor*, 929 F.3d 205 (5th Cir. 2019), this Court reasoned that a preliminary injunction barring enforcement of the Fair Labor Standards Act (FLSA) Overtime Rule was unenforceable against nonparties in a subsequent case who were not adequately represented by, and did not act in privity with, the

---

[84] *Texas*, 599 U.S. at 702-03 (Gorsuch, J., joined by Thomas & Barrett, JJ., concurring in the judgment).

[85] *Trump v. Hawaii*, 585 U.S. 667, 718 (2018) (Thomas, J., concurring in the judgment) (citing *Spokeo, Inc. v. Robins,* 578 U.S. 330, 344-346 (2016)).

[86] *Id.* (citing Ann Woolhandler & Caleb Nelson, *Does History Defeat Standing Doctrine*, 102 Mich. L. Rev. 689, 715-16 (2004)).

Department of Labor in the prior case.[87] Although the same due process constraint applies at the final judgment stage, the universal vacatur interpretation of "set aside" would leave a judge free to extinguish a rule and thus nullify the independent rights of nonparties. That is precisely what the district court purported to do in this case. Its failure to provide justification for nullifying the rights of thousands of nonparties who would otherwise rely on the Non-Compete Clause Rule in sister courts should at a minimum warrant remand.

### B. Universal vacatur displaces the judgments of sister courts and the undermines the comity among courts.

Proponents of universal vacatur argue that it promotes uniformity in the law.[88] Related to this objection is the concern, raised by Justice Kavanaugh in his *Corner Post* concurrence, that eliminating the universal vacatur remedy "would delay relief for many regulated parties."[89] But this dis-uniformity is not unusual, nor is it without reason. Rather, it is wholly consistent with the principle of comity

---

[87] *Texas v. Dep't of Lab.*, 929 F.3d at 207 (5th Cir. 2019).

[88] Bray, *Multiple Chancellors*, *supra*, at 421.

[89] *Corner Post*, 603 U.S. at 832 n.4 (Kavanaugh, J., concurring).

between courts of separate jurisdiction and the hierarchical structure of the federal judiciary.

State courts and lower federal courts often reach different conclusions on the same question. Such is the case here, where two separate challenges to the FTC's Noncompete Rule—*ATS Tree Services v. FTC*,[90] in the Eastern District of Pennsylvania, and *Properties of the Villages, Inc. v. FTC*,[91] in the Middle District of Florida—have reached different decisions than the lower court in this case. The court in *ATS Tree Services* upheld the rule,[92] while the court in *Villages* limited the injunction to the plaintiff only, refusing to enter an "injunction of nationwide implication."[93] Notably, following the lower court's "set aside" order in the instant case, plaintiff ATS Tree Services voluntarily dismissed its appeal—an apt illustration of how the universal vacatur remedy short-circuits development of the law via the hierarchical orientation of the federal judiciary.

---

[90] *ATS Tree Servs., LLC v. FTC*, No. 2:24-cv-1743, 2024 WL 3511630 (E.D. Pa. 2024).

[91] *Properties of the Villages, Inc. v. FTC*, No. 5:24-cv-315, 2024 WL 3870380 (M.D. Fla. 2024).

[92] *ATS Tree Servs.,* at *19.

[93] *Properties of the Villages*, at *11.

The initial dis-uniformity that flows from limited district court remedies is a feature of the federal judicial system, not a bug. Applying a more limited order resolves the purported harm to the party (or parties) in the instant case, while leaving open the possibility that the FTC may enforce the rule as to other parties and in other jurisdictions. It may also leave open the possibility that other regulated parties will challenge the Non-Compete Clause Rule, as has already occurred here. Nonparties employees or competitor employers who wish to avail themselves of the Rule may invoke it as a defense to affirmative litigation seeking to enforce a non-compete clause.

In any instance, a party-specific vacatur order allows the law to percolate among district courts and be appealed to their respective circuit courts. If the circuits all agree, their precedents resolve the question. And if they disagree, the Supreme Court gains from the clash of opposing views.[94] As Bray argues, "the national injunction requires the opposite sacrifice, giving up deliberate decisionmaking for

---

[94] Bray, *Multiple Chancellors, supra*, at 421.

accelerated resolution," and leaving the Supreme Court without the benefit of decisions from multiple courts of appeal.[95]

## C. Universal vacatur displaces Congress's judgment to enact mechanisms that resolve nationwide concerns.

**1.** As Chief Judge Sutton of the Sixth Circuit has explained, "[t]he law already has a mechanism for applying a judgment to third parties."[96] "That is the role of class actions, and Civil Rule 23 carefully lays out the procedures for permitting a district court to bind nonparties to an action."[97] Rule 23 is itself the product of the express delegation of authority that Congress gave the Supreme Court in the Rules Enabling Act.[98] Paraphrasing then-Professor Amy Coney Barrett, writing in 2003, an interpretation of "set aside" that circumvents the required class-action procedures thus would undermine "Congress's creation of 'a distinct regulatory scheme'" to govern district court proceedings.[99] Two decades later, Justice Barrett would concur in the same point: "If the

---

[95] *Id.*, at 422.

[96] *Arizona v. Biden*, 40 F.4th 375, 396 (6th Cir. 2022) (Sutton, C.J., concurring).

[97] *Id.*

[98] Fed. R. Civ. Proc. 23

[99] Amy Coney Barrett, *Stare Decisis and Due Process*, 74 U. Colo. L. Rev. 1011, 1026 (2003).

Congress that unanimously passed the APA in 1946 meant to overthrow the 'bedrock practice of case-by-case judgments with respect to the parties in each case' and vest courts with a 'new and far-reaching' remedial power, it surely chose an obscure way to do it."[100] Rather, Congress had not done so. As with universal injunctions, the vacatur remedy was not a run-around of the class action mechanism, particularly where "dozens" of nonparties had expressly rejected the "benefit" of vacatur.[101]

Even before the APA, cases that may have appeared to grant universal remedies were in effect class actions. In *Chicago, R.I. & P. Ry. Co. v. United States*, for instance, in which common carriers challenged an ICC order that affected all common carriers, "[a]ll common carriers by railroad in the United States were made parties respondent."[102] In *United States v. Baltimore & O. R. Co.*, involving another challenge to

---

[100] *United States v. Texas*, 599 U.S. 670, 695 (2023) (Gorsuch, J., with Thomas and Barrett, JJ., concurring in judgment) (citing *Arizona*, 40 F.4th at 396 (Sutton, C.J., concurring)).

[101] *Id.* at 703.

[102] *Chicago, R.I. & P. Ry. Co. v. United States*, 284 U.S. 80, 87 (1931)

an ICC order, "[p]ractically all the railroads of the United States were made respondents."[103]

Obtaining class certification under Rule 23 is not a trivial hurdle, but, as Professor Klein persuasively argues, that is by design.[104] When amending Rule 23 in 1966, the Advisory Committee explained that the prerequisites for class certification are "the reasons for, and the principal key to, the propriety and value of utilizing the class-action device."[105] In any event, assuming that it can be shown that the prerequisites for obtaining class certification are posing unwarranted obstacles to obtaining relief, the solution would be for the Supreme Court to amend Rule 23. But doubts about the efficacy of the existing class action mechanism do not give a district court judge license to universal enter relief without the protections attendant to certifying a class. Allowing otherwise would "render meaningless rules about joinder and class actions."[106]

---

[103]  *United States v. Baltimore & O. R. Co.*, 293 U.S. 454, 457 (1935)

[104] Klein, *supra,* fn. 9.

[105] *Id.*, citing Fed. R. Civ. P. 23 Advisory Committee note to 1966 Amendment.

[106] *United States v. Texas*, 599 U.S. at 703 (2023) (Gorsuch, J., with Thomas and Barrett, JJ., concurring in judgment)

**2.** A final source of concern is that universal relief strains the

Nation's separation of powers by exaggerating the role of the Judiciary

and "allowing individual judges to act more like a legislature by

decreeing the rights and duties of people nationwide."[107] Like federal

agencies, lower federal courts have only those powers given to them by

Congress. Except for constraints that flow directly from the

Constitution—like Article III's "case or controversy" requirement, or the

Fifth Amendment's Due Process Clause—the scope of a district court's

authority must be traceable to, and is conscribed by, federal statute.

And just as the APA constrains federal agencies to promulgate rules in

furtherance of statutory delegations of authority to do so, so too should

the APA be read to limit the judiciary's reach into the policymaking

realm.

Litigation is not the proper mechanism to repeal a current rule,

and in fact "circumvent[s] the usual and important requirement" under

the APA "that a regulation originally promulgated using notice and

---

[107] *Id.*

comment … may only be repealed through notice and comment."[108] And there is no basis in the law to presume that a district court's statutory authority to vacate a rule exceeds the authority of the agency itself to vacate a rule.  Vacatur-by-litigation deprives the public – including nonparty regulated stakeholders – of an opportunity to be heard through the rulemaking process.

The Supreme Court's latest term again provides further guidance. In *Loper Bright*, the Court overturned its longstanding deference to an agency's "permissible" interpretation of statute, and held a mirror to the federal judiciary's own authority: "To stay out of discretionary policymaking left to the political branches, judges need only fulfill their obligations under the APA to independently identify and respect such delegations of authority."[109] Otherwise, this Court risks "undermin[ing] public confidence in the neutrality and integrity of the Judiciary" by "conferring on themselves the power to invalidate laws at the behest of

---

[108] *Arizona v. City & Cty. of San Francisco, California*, 596 U.S. 763, 765 (2022) (Roberts, C.J., with Thomas, Alito, Gorsuch, JJ., concurring in the judgment).

[109] *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 374 (2024).

anyone who disagrees with them."[110] Universal vacatur cannot properly be made a substitute for notice-and-comment rulemaking.

## CONCLUSION

Because party-specific relief can adequately protect Plaintiff-Appellee's interests in this case, the district court abused its discretion when issuing universal relief. This Court should vacate the universal remedy order or, at a minimum, remand for further consideration of a remedy more limited in scope.

[signature of counsel on following page]

---

[110] *United States v. Texas*, 599 U.S. at 703 (2023) (Gorsuch, J., with Barrett, Thomas, JJ., concurring in the judgment).

Dated: January 9, 2025

Respectfully submitted,

*s/ Lee A. Hepner*
Lee A. Hepner
Laurel Kilgour
American Economic Liberties Project
2001 Pennsylvania Avenue NW
Suite 540
Washington, DC 20006
LHepner@economicliberties.us

*Counsel for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

This brief complies with Local Rule 29.3 and Federal Rule of Appellate Procedure 29(a)(5) because it contains 6,479 words, excluding the parts that can be excluded. This brief also complies with Federal Rule of Appellate Procedure 32(a)(5)–(6) because it has been prepared in a proportionally spaced face using Microsoft Word in 14-point Century Schoolbook font.

Dated: January 9, 2025     *s/ Lee A. Hepner*
                           Lee A. Hepner
                           Laurel Kilgour

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: January 9, 2025     *s/ Lee A. Hepner*
                           Lee A. Hepner
                           Laurel Kilgour