No. 24-10951

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

RYAN, L.L.C.,

Plaintiff-Appellee,

CHAMBER OF COMMERCE OF THE UNITED STATES
OF AMERICA; BUSINESS ROUNDTABLE; TEXAS ASSOCIATION
OF BUSINESS; LONGVIEW CHAMBER OF COMMERCE,

Intervenor-Plaintiffs-Appellees,

v.

FEDERAL TRADE COMMISSION,

Defendant-Appellant.

On Appeal from the United States District Court
for the Northern District of Texas

**RESPONSE IN OPPOSITION TO MOTION TO INTERVENE**

MICHAEL D. GRANSTON
  *Deputy Assistant Attorney General*

MICHAEL S. RAAB
SEAN R. JANDA
URJA MITTAL
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7260*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-3388*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

STATEMENT .........................................................................................................2

ARGUMENT ..........................................................................................................4

    A.    The Commission Adequately Represents Proposed Intervenors' Asserted Interests ..............................................................................5

    B.    Proposed Intervenors Lack a Cognizable Interest Sufficient to Support Intervention ..........................................................................6

    C.    Intervention Would Undermine Congress's Judgment that the Commission Supervise the Defense of Its Actions ..................................12

CONCLUSION ..................................................................................................... 15

CERTIFICATE OF COMPLIANCE

# INTRODUCTION

An organization and two individuals seek to intervene in this appeal of a final judgment vacating a rule promulgated by the Federal Trade Commission. The challenged rule defines most existing non-competes as unfair methods of competition prohibited by the Federal Trade Commission Act and bans the future use of most non-competes. Non-Compete Clause Rule, 89 Fed. Reg. 38,342 (May 7, 2024).

The motion to intervene should be denied. As this Court has recognized, intervention on appeal is reserved for extraordinary circumstances not present here. Any prospective intervenors on appeal must demonstrate a concrete interest to support their standing on appeal and a legally protectable interest necessary to justify intervention at this stage. The prospective intervenors cannot make this showing, as their asserted harms remain too speculative to support their intervention as a party in this litigation.

Notwithstanding movants' claim to benefit from the rule, their participation would be in tension with Congress's considered decision to authorize the federal government to oversee, control, and coordinate the defense of federal agency action. Congress expressly provided that the Commission would have the exclusive authority to supervise and defend its rulemakings in litigation, and the Commission has lawfully exercised that authority here in accordance with its rules and procedures and in cooperation with the Solicitor General, who supervises the appellate litigation of the Department of Justice. Thus, this Court should deny the motion.

# STATEMENT

**1.** The FTC Act, originally enacted in 1914, "declared unlawful" all "[u]nfair methods of competition in or affecting commerce." 15 U.S.C. § 45(a)(1). In addition, the Act established the Commission as a bipartisan expert agency with authority for enforcing the Act's prohibition on such unfair methods of competition. Thus, Congress "empowered and directed" the Commission "to prevent persons" and other entities subject to the Commission's jurisdiction "from using unfair methods of competition in or affecting commerce." *Id.* § 45(a)(2). Congress vested the Commission with various powers to carry out its mandate to prevent unfair methods of competition. As relevant here, Congress provided that the "Commission shall also have power" "to make rules and regulations for the purpose of carrying out the provisions of" the FTC Act. *Id.* § 46(g).

**2.** In 2018, the Commission began to evaluate whether non-competes are unfair methods of competition. Following a notice-and-comment process, in May 2024, the Commission issued findings of fact and concluded that non-competes are unfair methods of competition because they (1) are a method of competition, as opposed to a condition of the marketplace, 89 Fed. Reg. at 38,374, (2) are restrictive and exclusionary, *id.*, and (3) tend to negatively affect competition in labor, product, and service markets, *id.* at 38,379-402, 38,406-11. The Commission also found that non-competes with workers other than senior executives are exploitative and coercive because they are almost always imposed unilaterally by employers with superior

bargaining power, typically without meaningful negotiation or compensation, *id.* at 38,374-79; that is less often true for senior executives, who are more likely to bargain over, and receive compensation for, non-competes, *id.* at 38,405-06.

For these reasons, the Commission adopted the Non-Compete Rule. The Rule provides that it is an unfair method of competition under Section 5(a) of the FTC Act for covered persons to enter into non-competes after the Rule's effective date, September 4, 2024. 89 Fed. Reg. at 38,342. The Rule also prohibits covered persons from enforcing existing non-competes except with respect to senior executives and requires covered persons to notify current and former employees subject to covered non-competes that the non-competes are unenforceable. *See id.*

**3.** Plaintiff Ryan, L.L.C., a global tax services firm that has non-competes with its principals and employees, filed this suit challenging the Non-Compete Rule. ROA.133. Four business associations—the Chamber of Commerce of the United States of America, Business Roundtable, Texas Association of Business, and Longview Chamber of Commerce—subsequently intervened as plaintiffs. ROA.842.

The district court granted plaintiffs' motions for summary judgment on their claims that the Commission is not statutorily authorized to issue the Rule and that the Rule is arbitrary and capricious. ROA.5626-36. The district court vacated the Rule in its entirety, asserting that the Administrative Procedure Act "require[s]" a court to "'set aside'" any agency action that is in excess of statutory authority or arbitrary and capricious. ROA.5637 (quoting 5 U.S.C. § 706(2)).

The Commission appealed the district court's final judgment.

**4.** On January 13, 2025, after the Commission filed its opening brief in this appeal, three proposed intervenors moved to intervene as defendants-appellants. The proposed intervenors seek leave to intervene for purposes of continuing to litigate this appeal in the event the Commission determines that it will no longer defend the Rule. *See* Mot. 2-3.

## ARGUMENT

This Court should deny the motion. "No statute or rule provides a general standard to apply in deciding whether intervention on appeal should be allowed." *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 276 (2022). "[I]n part because there is no rule allowing them," including in the Federal Rules of Appellate Procedure, "motions to intervene on appeal are reserved for truly exceptional cases"—namely, those where there are "imperative reasons" to permit intervention. *Richardson v. Flores*, 979 F.3d 1102, 1104-05 (5th Cir. 2020) (quotation omitted); *see also id.* at 1105 (describing the "steep threshold for allowing intervention on appeal"). In the absence of "any rule that governs appellate intervention," the Supreme Court has considered "the policies underlying intervention in the district courts," including "the legal interest that a party seeks to protect through intervention on appeal," *EMW Women's Surgical Ctr.*, 595 U.S. at 277 (quotation omitted); *see* Fed. R. Civ. P. 24, in determining whether intervention on appeal is appropriate.

4

Here, the Commission has defended the Rule pursuant to the authority Congress expressly conferred upon the Commission to defend its actions. Intervenors' asserted interests are therefore adequately represented.

More fundamentally, movants here seek to enter the case to defend a Rule issued by the Commission in the event the Commission itself decides not to do so. Granting intervention in those circumstances would undermine Congress's considered judgment to allow the Commission (acting through its Presidentially appointed, Senate-confirmed Commissioners) to supervise the defense of its own rules—in accordance with its statutory authority, rules, and procedures—particularly given the precedential effects of a loss on appeal on the Commission.

### A. The Commission Adequately Represents Proposed Intervenors' Asserted Interests

In determining whether a case presents the "exceptional" circumstances permitting intervention on appeal, *Richardson*, 979 F.3d at 1104, the Court may properly consider the "policies underlying intervention in the district courts," "including the legal interest that a party seeks to protect through intervention on appeal," *EMW Women's Surgical Ctr.*, 595 U.S. at 277 (quotations omitted). The purpose of intervention is to permit a nonparty to join a case as a party when there is a risk that the movant's absence from the litigation will compromise the intervenor's interests. Thus, intervention in district court is not permitted when "existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). The same basic policy

governs intervention on appeal, but in a more stringent way. Allowing intervention on appeal risks incentivizing potential intervenors to wait to see what happens in district court (thus avoiding the risks of discovery and of being bound by an adverse judgment) before seeking to become a party on appeal, after the burdens of party status in litigation have abated. Thus, this Court permits intervention on appeal only in "truly exceptional cases" where "imperative reasons" justify the conclusion that it is appropriate to add a new party to the litigation so late in the proceedings. *Richardson*, 979 F.3d at 1104-05 (quotation omitted).

This is not that "exceptional case." The Commission has defended the Rule in the district court, appealed an adverse final judgment, and filed an opening brief on appeal. As movants acknowledge, the Commission has represented the public's interests, consistent with Congress's decision to vest the Commission with statutory authority to defend its actions.

### B. Proposed Intervenors Lack a Cognizable Interest Sufficient to Support Intervention

Intervention on appeal, as in district court, requires a prospective intervenor to demonstrate a "legal 'interest'" that it seeks "to 'protect' through intervention." *EMW Women's Surgical Ctr.*, 595 U.S. at 277 (quoting Fed. R. Civ. P. 24(a)(2)). Movants have failed to establish a legally cognizable interest sufficient to support intervention on appeal.

**1.** Proposed intervenors seek to intervene to defend the Rule in the event that the Commission "seeks to voluntarily dismiss this appeal, hold these proceedings in abeyance, stipulate to judgment, decline to seek *en banc* or Supreme Court review of an adverse decision, or take similar action." Mot. 22. Even apart from the speculative nature of that argument, movants have not demonstrated a legally cognizable interest sufficient to support intervention. When a putative intervenor "seek[s] additional relief beyond that which" the parties seek, the intervenor must demonstrate Article III standing. *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017); *see also Diamond v. Charles*, 476 U.S. 54, 68 (1986) (explaining that when an intervenor seeks to "continue a suit in the absence of the party on whose side intervention was permitted," the intervenor must demonstrate its own standing to appeal); *Old Dominion Elec. Coop. v. FERC*, 892 F.3d 1223, 1232 (D.C. Cir. 2018). Article III standing requires demonstrating "an 'injury in fact'—an invasion of a legally protected interest" that is "concrete," "particularized," and "not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (quotation omitted).

The proposed intervenors lack a legal interest that justifies intervention on appeal, for several reasons.

*First*, proposed intervenor Small Business Majority asserts a legally protected interest based on the "harms [that] non-compete agreements inflict on small businesses" in the organization's "network." Mot. 18. Small Business Majority does not assert that it is itself regulated by the Rule or uniquely benefitted by the Rule—

7

that is, it does not appear to claim standing to intervene in its own right as an organization. Instead, Small Business Majority appears to assert standing to intervene in defense of the Rule on a theory of associational standing. It describes itself as a "network" comprising "more than 85,000 small businesses," which may "join [the] network in multiple ways," such as by "registering for events hosted by" the organization or "signing up for" the organization's newsletter. Arensmeyer Decl. 1. But this representation that its "network" includes at least some small businesses that will be assisted by the Rule does not satisfy the requirements for associational standing under this Court's precedents. Among other things, it is unclear that Small Business Majority has the sort of "indicia of membership" that this Court's cases demand. *Friends of the Earth, Inc. v. Chevron Chem. Co.*, 129 F.3d 826, 829 (5th Cir. 1997). This Court rightly requires more assurance of consensual representation before permitting an organization to bind, in federal litigation, thousands of businesses who may have joined a "network" merely by attending an event or signing up for a newsletter. *Cf. FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367, 399-405 (2024) (Thomas, J., concurring) (explaining the serious "constitutional concerns" raised by the doctrine of associational standing). Just as organizational plaintiffs cannot properly seek universal relief on behalf of unidentified members with unidentified interests, *see* Brief of Appellant at 51-54, Small Business Majority has failed to establish that it can bind the thousands of businesses it purports to represent.

*Second*, the two prospective individual intervenors likewise lack an adequate legal interest to support intervention. Roffino states that he left a job that involved a two-year post-employment noncompete on February 17, 2023, and has since secured employment that does not violate the non-compete. *See* Roffino Decl. ¶ 25; *id.* Ex. A, at 2. The non-compete to which Roffino is subject expires in less than a month. Roffino asserts that he has a cognizable interest in this suit, because he "will be hampered by the prospect of litigation" if he starts a competing business even after the non-compete expires and he "worries that his former employer would try to enforce the noncompete against him." Mot. 20 (alterations and quotation omitted). Roffino's speculation that his former employer might seek to enforce an expired non-compete at some point in the future, in the event Roffino starts a new business, rests on a "highly attenuated chain of possibilities" and fails to demonstrate the requisite "certainly impending" injury that could support a cognizable Article III interest in this suit. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013).

In Emmer's case, the relevant non-compete "prohibit[s] [her] from serving as a therapist for any patient [she] started treating while at [her] current employer" unless "continuing treatment of a patient is clinically necessary," as determined by her employer. Emmer Decl. 1-2. Emmer states that the non-compete has prevented her from seeking other work, although her declaration leaves unclear any details of why she cannot seek or accept work as a therapist for patients she does not currently treat. The Rule applies to those non-competes that "prohibit[] a worker from, penalize[] a

9

worker for, or function[] to prevent a worker from" "[s]eeking or accepting work" with a different company or operating a different business, 89 Fed. Reg. at 38,502. Emmer's non-compete appears not to fall within the "prohibit" or "penalize" prongs of the Rule. *See* 89 Fed. Reg. at 38,364. And her declaration leaves unclear why she believes her non-compete "restrain[s] such a large scope of activity that [it] function[s] to prevent a worker from seeking or accepting other work or starting a new business after their employment ends, although [it is] not expressly triggered by these specific undertakings," *id.*—*i.e.*, why her non-compete is prohibited by the "functions to prevent" prong of the Rule. It is thus not clear that Emmer's non-compete would be prohibited under the Rule.

*Third*, a diffuse interest in the continued enforceability of a generally applicable regulation does not provide the necessary direct and personal stake to support appellate intervention. A contrary understanding—under which any person could intervene merely by asserting a possible effect from the result of a case—would be unworkable, "clutter[ing] too many lawsuits with too many parties." *City of Chicago v. Federal Emergency Mgmt. Agency*, 660 F.3d 980, 985 (7th Cir. 2011).

**2.** In addition, although movants effectively seek to intervene as defendants-appellants, they have not established that they are properly considered defendants to this action. Plaintiffs could not bring their claims challenging the Rule against the proposed intervenors (who have no apparent connection to plaintiffs), and it is unclear how the proposed intervenors could have any defenses to plaintiffs' claims.

10

The requirement of Rule 24 that a putative intervenor be able to file a "pleading" setting out the "defense" it would assert if allowed to become a party defendant accordingly limits intervention to circumstances where the intervenor seeks to defend its own substantive legal rights in opposition to a claim in the pending action that could have been asserted against it. Fed. R. Civ. P. 24(c); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 n.18 (1997) (quotation omitted). That requirement ensures a close connection between the proposed intervenors and the underlying action.

That close connection is absent here. Instead, the movants seek to intervene in a suit regarding the facial validity of the Rule, unconnected to any specific application of the Rule or of the statute to proposed intervenors specifically. *Cf. Trbovich v. United Mine Workers of Am.*, 404 U.S. 528 (1972) (holding that a union member could intervene in an enforcement suit brought by the Secretary of Labor against a union despite enforcement being limited to the Secretary but only "so long as that intervention is limited to the claims" being pursued by the Secretary).

**3.** Nor does this case resemble those in which the Court has found "imperative reasons" justifying appellate intervention in the past. *See, e.g.*, *United States v. Bursey*, 515 F.2d 1228, 1238 n.24 (5th Cir. 1975) (quotation omitted). In *Bursey*, for example, the parents of a criminal defendant posted a deposit on the defendant's bond that was supposed to "revert to" the parents "upon disposition of the case." *Id.* at 1231. After the case was dismissed, the district court entered an order "without notice to the parties or a prior hearing" "directing the clerk of the court to transmit" the deposit

11

"for deposit in the Treasury as reimbursement for the costs of [the defendant's] appointed counsel." *Id.* The parents moved to intervene on appeal, explaining that the "deposit was their property and that they, rather than [the defendant, were] thus the real parties in interest." *Id.* at 1232. In those "exceptional circumstances," *id.* at 1238 n.24, this Court concluded that the parents had demonstrated imperative reasons to permit intervention. In contrast to the *Bursey* intervenors, the proposed intervenors here do not claim that they, rather than the Commission, are the real parties in interest in this suit whose interest that can be preserved only through intervention in this appeal.

### C. Intervention Would Undermine Congress's Judgment that the Commission Supervise the Defense of Its Actions

Intervention on appeal in the present circumstances also would undermine the authority that Congress placed in the federal government—and in particular, in the Commission—to conduct and control litigation in defense of federal agency actions, including rulemakings.

By statute, Congress provided that the Commission "shall have exclusive authority" to "defend" and "supervise the litigation of" any suit seeking to "obtain judicial review of a rule prescribed by the Commission," as well as to authorize the Attorney General to represent the Commission in such a suit. 15 U.S.C. § 56(a)(2). Congress expressly recognized that the Commission's control over such litigation extends to appeals, in cooperation with the Department of Justice. *Id.* This

authorization is consistent with congressional design more broadly, which vests in the Attorney General the responsibility for "attend[ing] to the interests of the United States" in the courts. 28 U.S.C. § 517; *see also id.* § 516.

Thus, Congress contemplated that the Commission would conduct and supervise the defense of any challenges to its rulemakings in the first instance, which is precisely what the Commission has done in this case. Further, the Commission has voting procedures and processes governing the defense of litigation challenging Commission actions, including rulemakings, pursuant to which the Commission, represented by the Department of Justice, has defended the Rule in this case and in all other challenges to the Rule since its issuance. Permitting a private entity to intervene as defendant-appellant in these circumstances would undermine the statutory scheme. *Cf. FEC v. NRA Political Victory Fund*, 513 U.S. 88, 96 (1994) (describing the assignment of authority to the Attorney General to supervise other kinds of litigation as "represent[ing] a policy choice by Congress"). Congress's determination that the Commission "shall have exclusive authority" to oversee the defense of its agency actions reflects its legislative judgment that the Commission is best positioned to ensure that any such litigation and defense is consistent with the Commission's legal interests, policy goals, and statutory mandates. When the Commission, either on its own behalf or represented by the Department of Justice, conducts litigation over the validity of its own rules, as it is statutorily authorized to do and as it has done here,

allowing a third party to intervene and alter the direction of the litigation would flout congressional design.

Were it otherwise, intervenors could inject themselves in litigation and thwart the Commission's efforts to carry out its statutory mandates and to preserve its legal interests. For instance, the Commission may make choices in litigation about what arguments to advance regarding its authority to engage in rulemaking—choices that will reflect the Commission's understanding of its statutes and regulations, as well as the Commission's judgment about how best to safeguard its broader, long-term legal interests, just as Congress intended. Permitting an intervenor to interject new arguments in the litigation that are not consistent with the Commission's judgment risks undermining these choices and efforts. It is the Commission to which Congress assigned the responsibility in the first instance to weigh the costs and benefits of advancing different arguments, and of winning and losing on different arguments— both in terms of the judicial precedent that might result and its effects on the Commission's ability to carry out its statutory duties. *See also* 15 U.S.C. § 56(a)(3) (collaboration with the Solicitor General in the Supreme Court). These are decisions that Congress tasked the Commission with making, in furtherance of the public interest, and that this Court should not permit intervenors to usurp.[1]

---

[1] Proposed intervenors also request that the Court "order the government to provide at least 10 days' notice to Proposed Intervenors and the Court before voluntarily dismissing this appeal or stipulating to judgment." Mot. 14 n.2; *see also* Mot.

*Continued on next page.*

# CONCLUSION

For the foregoing reasons, the Court should deny the motion to intervene.

Respectfully submitted,

MICHAEL D. GRANSTON
   *Deputy Assistant Attorney General* [*]

MICHAEL S. RAAB

*s/ Sean R. Janda*
SEAN R. JANDA
URJA MITTAL
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7260*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 514-3388*
   *sean.r.janda@usdoj.gov*

January 2025

---

22-23. But proposed intervenors cite no authority to support this request, and requiring the government to provide advance notice of its litigation decisions would undermine Congress's determinations regarding federal government control of federal government litigation (as explained).

[*] The Acting Assistant Attorney General is recused in this matter.

## CERTIFICATE OF COMPLIANCE

This response complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2) because it contains 3506 words. This response also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Sean R. Janda*
SEAN R. JANDA
