# In the United States Court of Appeals for the Fifth Circuit

—————

Ryan LLC,

*Plaintiff-Appellee*,

Chamber of Commerce of the United States of America; Business Roundtable; Texas Association of Business; Longview Chamber of Commerce,

*Intervenor Plaintiffs - Appellees*

*v.*

Federal Trade Commission,

*Defendant-Appellant.*

—————

On Appeal from the U.S. District Court for the Northern District of Texas

—————

**BRIEF FOR TEXAS, ALABAMA, ARKANSAS, FLORIDA, GEORGIA, IDAHO, INDIANA, IOWA, LOUISIANA, MISSISSIPPI, MONTANA, NEBRASKA, OHIO, SOUTH CAROLINA, SOUTH DAKOTA, TENNESSEE, UTAH, VIRGINIA, AND WEST VIRGINIA AS AMICI CURIAE IN SUPPORT OF PLAINTIFF-APPELLEE**

—————

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Aaron L. Nielson
Solicitor General
aaron.nielson@oag.texas.gov

Brendan Fugere
Assistant Attorney General

Counsel for the State of Texas

## Certificate of Interested Persons

No. 24-10951

RYAN LLC,

*Plaintiff-Appellee,*

CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA; BUSINESS ROUNDTABLE; TEXAS ASSOCIATION OF BUSINESS; LONGVIEW CHAMBER OF COMMERCE,

*Intervenor Plaintiffs - Appellees*

*v.*

FEDERAL TRADE COMMISSION,

*Defendant-Appellant.*

The States, as a governmental amici curiae, need not furnish a certificate of interested persons under Fifth Circuit Rule 28.2.1.

/s/ Aaron L. Nielson
AARON L. NIELSON
*Counsel of Record for*
*the State of Texas*

# TABLE OF CONTENTS

Certificate of Interested Persons ............................................................................i

Table of Authorities ...........................................................................................iii

Introduction and Interests of Amicus Curiae .........................................................1

Summary of the Argument.....................................................................................2

Argument...............................................................................................................4

    I.   *National Petroleum* is Wrong. ....................................................................4

        A.  *National Petroleum* misapplied numerous rules of interpretation. ..............................................................................5

        B.  *National Petroleum* ignores other rules of interpretation. ...................14

    II.  State Variety is a Feature of Federalism...................................................20

        A.  The basics of federalism. .................................................................20

        B.  State variety is especially valuable here. ...........................................21

    III.  The District Court Properly Vacated the Rule. .......................................22

        A.  Vacatur is an appropriate remedy.....................................................23

        B.  Federalism supports vacatur. ...........................................................24

Conclusion............................................................................................................24

Certificate of Service............................................................................................26

Certificate of Compliance .....................................................................................26

**Cases:**

*Airlines for Am. v. Dep't of Transp.*,
  110 F.4th 672 (5th Cir. 2024) ..................................................... 8, 13

*Ala. Ass'n of Realtors v. HHS*,
  594 U.S. 758 (2021) .................................................. 14, 15, 16, 18

*Allegheny Defense Project v. FERC*,
  964 F.3d 1 (D.C. Cir. 2020) (en banc) ..................................... 9

*Am. Bar Ass'n v. FTC*,
  430 F.3d 457 (D.C. Cir. 2005) ................................................... 16

*Apter v. Dep't of Health & Hum. Servs.*,
  80 F.4th 579 (5th Cir. 2023) ...................................................... 9

*Arulnanthy v. Garland*,
  17 F.4th 586 (5th Cir. 2021) ...................................................... 13

*Atlantic City Elec. Co. v. FERC*,
  295 F.3d 1 (D.C. Cir. 2002) ......................................................... 6

*Azar v. Allina Health Servs.*,
  587 U.S. 566 (2019) ..................................................................... 9

*Badgerow v. Walters*,
  596 U.S. 1 (2022) .......................................................................... 7

*Bartenwerfer v. Buckley*,
  598 U.S. 69 (2023) .................................................................... 7, 22

*Berger v. N.C. State Conference of the NAACP*,
  597 U.S. 179 (2022) .................................................................... 20

*Biden v. Nebraska*,
  143 S.Ct. 2355 (2023) ..................................................... 6, 14, 22

*Bittner v. United States*,
  598 U.S. 85 (2023) ....................................................................... 7

*Bond v. United States*,
  572 U.S. 844 (2014) ............................................................... 18, 19

*BST Holdings, LLC v. OSHA*,
  17 F.4th 604 (5th Cir. 2021) ..................................................... 15

*Chamber of Com. of United States v. U.S. Dep't of Lab.*,
  885 F.3d 360 (5th Cir. 2018) .................................................... 12

*Collins v. Yellen*,
  594 U.S. 220 (2021) ........................................................ 7

*Conroy v. Aniskoff*,
  507 U.S. 511 (1993) ...................................................... 14

*Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*,
  603 U.S. 799 (2024) ................................................ 22, 23

*Cream Wipt Food Prods. Co. v. Fed. Sec. Adm'r*,
  187 F.2d 789 (3d Cir. 1951) ........................................ 23

*In re DeBerry*,
  945 F.3d 943 (5th Cir. 2019) ........................................ 8

*Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*,
  601 U.S. 42 (2024) ....................................................... 8

*Dobbs v. Jackson Women's Health Org.*,
  597 U.S. 215 (2022) .................................................... 20

*Duarte v. Mayorkas*,
  27 F.4th 1044 (5th Cir. 2022) ..................................... 23

*Epic Systems Corp. v. Lewis*,
  584 U.S. 497 (2018) ...................................................... 8

*FDA v. Brown & Williamson Tobacco Corp.*,
  529 U.S. 120 (2000) .................................................... 12

*Food Mktg. Inst. v. Argus Leader Media*,
  588 U.S. 427 (2019) ...................................................... 1

*Free Enterprise Fund v. PCAOB*,
  561 U.S. 477 (2010) ...................................................... 4

*Gregory v. Ashcroft*,
  501 U.S. 452 (1991) .................................................... 18

*Gundy v. United States*,
  588 U.S. 128 (2019) .................................................... 18

*Heating, Air Conditioning & Refrigeration Distribs. Int'l v. EPA*,
  71 F.4th 59 (D.C. Cir. 2023) ....................................... 16

*Hibbs v. Winn*,
  542 U.S. 88 (2004) ...................................................... 13

*Howard Hughes Co. v. C.I.R.*,
  805 F.3d 175 (5th Cir. 2015) ...................................... 13

*INS v. Chadha*,
  462 U.S. 919 (1983) ...................................................... 1

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
591 U.S. 657 (2020) ........................................................................8

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024) ............................... 6, 9, 11, 12, 17, 22

*Louisiana Pub. Serv. Comm'n v. FCC*,
476 U.S. 355 (1986) ...................................................... 1, 6

*Louisiana v. Biden*,
55 F.4th 1017 (5th Cir. 2022) ....................................... 12

*Louisiana v. U.S. Dep't of Energy*,
90 F.4th 461 (5th Cir. 2024).............................................6

*In re MCP No. 185*,
No. 24-7000, 2024 WL 3650468 (6th Cir. Aug. 1, 2024)................................. 17

*Milner v. Dep't of Navy*,
562 U.S. 562 (2011)............................................................9

*Mistretta v. United States*,
488 U.S. 361 (1989)........................................................ 18

*Nat'l Petroleum Refiners Ass'n v. FTC*,
482 F.2d 672 (D.C. Cir. 1973) ................................*passim*

*New State Ice Co. v. Liebmann*,
285 U.S. 262 (1932) ..........................................................2

*NFIB v. OSHA*,
595 U.S. 109 (2022) ........................................................22

*Obduskey v. McCarthy & Holthus LLP*,
586 U.S. 466 (2019) ..........................................................9

*Rest. L. Ctr. v. U.S. Dep't of Lab.*,
120 F.4th 163 (5th Cir. 2024) ...........................................9

*Rodriguez v. United States*,
480 U.S. 522 (1987) ..........................................................9

*Ryan, LLC v. FTC*,
No. 3:24-CV-00986-E, 2024 WL 3879954
(N.D. Tex. Aug. 20, 2024)...............................2, 13, 15, 16, 21, 22, 23

*Texas v. Becerra*,
89 F.4th 529 (5th Cir. 2024) .............................................7

*Texas v. United States*,
809 F.3d 134 (5th Cir. 2015)..............................................7

*United States v. Morton Salt Co.*,
338 U.S. 632 (1950) ................................................................ 11

*Util. Air Regul. Grp. v. EPA*,
573 U.S. 302 (2014)............................................................ 10, 12

*W. Va. Univ. Hosps., Inc. v. Casey*,
499 U.S. 83 (1991) .................................................................. 13

*West Virginia v. EPA*,
597 U.S. 697 (2022) ............................................................... 15

*Whitman v. Am. Trucking Ass'ns*,
531 U.S. 457 (2001) ............................................................16, 18

**Statutes and Rules:**

5 U.S.C. §706(2).................................................................. 22, 23

15 U.S.C.:
§45(a)(1) ..............................................................................6
§45(b) ..................................................................................6
§46(g) ......................................................................... 4, 13, 16

**Other Authorities:**

Aditya Bamzai, *The Origins of Judicial Deference to Executive Interpretation*,
126 YALE L.J. 908 (2017) ....................................................... 12

Andrew S. Oldham, *Sherman's March (in)to the Sea*,
74 TENN. L. REV. 319 (2007) .................................................. 18

Black's Law Dictionary 1612 (3d ed. 1933) ............................23

Cass R. Sunstein, *It All Started With* Benzene,
76 ADMIN. L. REV. 673 (2024) ............................................... 17

John Manning, *Lawmaking Made Easy*,
10 GREEN BAG 2d 191 (2007) ...................................................1

Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*,
104 VA. L. REV. 933 (2018)..................................................... 23

Noncompete Rule, Texas | Statewide Impact (2024),
https://tinyurl.com/37f6t4zc ................................................ 15

Richard Pierce, *Unsolicited Advice for FTC Chair Khan*, YALE J. ON
REG. NOTICE & COMMENT (Jul. 15, 2021),
https://tinyurl.com/d532katv ................................................ 19

Thomas W. Merrill & Kathryn Tongue Watts, *Agency Rules with the Force of Law: The Original Convention*,
116 HARV. L. REV. 467 (2002) ..................................................3

Thomas W. Merrill, *Antitrust Rulemaking: The FTC's Delegation Deficit*, Columbia Public Law Research Paper (last revised Nov. 10, 2023), https://tinyurl.com/5n7n38s7 ..............................................................4

# Introduction and Interests of Amicus Curiae

The District of Columbia and a group of States have filed an amicus brief in support of the Federal Trade Commission's so-called "Non-Compete Rule." *See* Brief of the District of Columbia et al. as Amici Curiae, ECF No. 60 (hereinafter "D.C. Brief"). Unfortunately, not only does that brief oversimplify the issue of noncompete agreements, but it also reflects confusion about the separation of powers and federalism. Amici States file this brief to set the record straight regarding three foundational points.

***First***, a federal agency "literally has no power to act ... unless and until Congress confers power" to do so. *Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986). Here, the FTC claims authority to promulgate substantive competition rules. Congress, however, has not authorized such rules. Not only has the FTC not attempted to exercise such authority for decades, but the primary authority it relies upon—*National Petroleum Refiners Association v. FTC*, 482 F.2d 672 (D.C. Cir. 1973)—is a "relic from a bygone era of statutory interpretation." *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 437 (2019). Because Congress has not authorized the FTC to create substantive competition rules, appeals to policy are irrelevant.

***Second***, Congress only can confer authority on an agency through bicameralism and presentment. *See INS v. Chadha*, 462 U.S. 919, 946 (1983). Unless and until Congress enacts legislation through that process—one that, "by design," requires broad national support before proposals become law, John Manning, *Lawmaking Made Easy*, 10 Green Bag 2d 191, 202 (2007)—the States are responsible for economic and social policy and may disagree with each other. This structural feature of

our Constitution respects State sovereignty and enables State experimentation. *See, e.g.*, *New State Ice Co. v. Liebmann*, 285 U.S. 262, 311 (1932) (Brandeis, J., dissenting). That States disagree therefore does not mean a federal solution is required; instead, as here, a variety of approaches is often best.

And ***third***, where, as here, a federal agency acts without statutory authority, vacatur is an appropriate remedy. If a State wishes to adopt a policy like the Non-Compete Rule, it is free to do so within its own borders, so long as it follows its own law-making process. But unlawful federal regulations should be vacated.

## Summary of the Argument

The district court rightly vacated the Non-Compete Rule. As Judge Ada Brown explained, Congress has not authorized the FTC to promulgate substantive competition rules, and *National Petroleum* was wrongly decided. *See Ryan, LLC v. FTC*, No. 3:24-CV-00986-E, 2024 WL 3879954, at *9-12 (N.D. Tex. Aug. 20, 2024). The FTC's other statutory arguments similarly fail, and the Non-Compete Rule also flunks basic requirements of reasoned decision-making. *Id.* at *14. Given these fatal errors, Judge Brown vacated the Non-Compete Rule, thus precluding the FTC from enforcing it anywhere. *Id.*

The Court should affirm Judge Brown's decision across the board. Judge Brown, however, did not identify all the flaws with *National Petroleum*. And because she correctly applied this Court's precedent, she also had no reason to explain using first principles why vacatur is a lawful remedy that also supports federalism. Amici States

accordingly submit this brief to reiterate certain bedrock principles about our constitutional system.

**I.** Like any federal agency, the FTC can only act when authorized by Congress. In ways great and small, however, *National Petroleum* is out of step with established principles of interpretation. In 1973, Judge J. Skelly Wright wrongly "adopted what amounted to a new canon: unless the legislative history reveals a clear intent to the contrary, courts should resolve any uncertainty about the scope of an agency's rulemaking authority in favor of finding a delegation of the full measure of power to the agency." Thomas W. Merrill & Kathryn Tongue Watts, *Agency Rules with the Force of Law: The Original Convention*, 116 HARV. L. REV. 467, 557 (2002). Because Congress never authorized the Non-Compete Rule, policy arguments are irrelevant.

**II.** The fact that federal agencies cannot act without congressional authorization is a beneficial aspect of our Constitution—not something to be bemoaned or evaded. Bicameralism and presentment is difficult precisely because the States, by constitutional design, have the primary role over economic and social policy. That States may disagree about policy issues is a central feature of our Constitution and does not mean a federal solution is warranted. States are addressing noncompete agreements in many ways, and this variety of State-level policy approaches ultimately will result in better, more tailored policy choices.

**III.** Judge Brown also correctly vacated the Non-Compete Rule. On appeal, the FTC challenges that vacatur. The plain text of the APA, however, provides that courts shall vacate agency actions that are not in accordance with law. If States,

moreover, want something like the Non-Compete Rule within their borders, they are free to create it themselves. This aspect of federalism thus provides an additional reason for this Court to affirm Judge Brown's decision.

## ARGUMENT

### I. *National Petroleum* is Wrong.

The question here is whether Congress authorized the FTC to create substantive competition rules. Because the answer to that question is "no," policy arguments are *per se* irrelevant. *See Free Enterprise Fund v. PCAOB*, 561 U.S. 477, 501-02 (2010). Appellee has well explained why the FTC's assertion of power fails. As further evidence, Amici States focus in particular on the FTC's leading authority, *National Petroleum*, which cannot be reconciled with a host of interpretive rules.

The textual, structural, and historical evidence against the FTC's reading of the Federal Trade Commission Act is overwhelming. *See, e.g.*, Thomas W. Merrill, *Antitrust Rulemaking: The FTC's Delegation Deficit*, Columbia Public Law Research Paper (last revised Nov. 10, 2023), https://tinyurl.com/5n7n38s7. Studying the statute, no one would think that Congress granted the FTC substantive authority to define fair competition in Section 6(g) of the FTC Act—a narrow provision in the middle of a list of ancillary powers. *See* 15 U.S.C. §46(g). History confirms the point: When Congress enacted the FTC Act more than a century ago, this provision "was understood as granting the agency the power to make only housekeeping rules." Merrill & Watts, *supra*, at 494. The FTC's primary argument against Judge Brown's analysis thus comes not from the statute itself, but rather from *National Petroleum*

and its progeny. Reading *National Petroleum*, however, is like entering a time machine. Even a cursory review shows that the D.C. Circuit rested its analysis on principles that courts today reject while ignoring other principles that courts today embrace.

## A. *National Petroleum* misapplied numerous rules of interpretation.

In *National Petroleum*, the D.C. Circuit indicated for the first time that the FTC may promulgate substantive competition rules. To illustrate just how out of step *National Petroleum* is with modern rules of interpretation, the Court would do well to compare the dozen Westlaw headnotes for *National Petroleum* with recent precedent from the Supreme Court and this Court.

> **Headnote 1: "Federal Trade Commission is creation of Congress and extent of its powers can be decided only by considering powers Congress specifically granted it in light of statutory language and background."**
>
> **Headnote 3: "Federal Trade Commission has responsibility to protect consumer from being misled by governing conditions under which goods and services are advertised and sold to individual purchasers."**

The D.C. Circuit's analysis started off correctly. The court recognized that because the FTC "is a creation of Congress, not a creation of judges' contemporary notions of what is wise policy," it follows that "[t]he extent of its powers can be decided only by considering the powers Congress specifically granted it." *Nat'l Petroleum*, 482 F.2d at 674. The court also correctly observed that, "[a]s always," courts "must begin with the words of the statute creating the Commission and delineating its powers." *Id.*

But then the court lost its way. Section 5(a) of the FTC Act prevents "unfair methods of competition," and Section 5(b) "specifies that the Commission is to accomplish this goal by means of issuance of a complaint, a hearing, findings as to the facts, and issuance of a cease and desist order," but says nothing about rulemaking. *Id.* at 675 (footnote omitted). Thus, there can be no substantive rules because Congress has not authorized them. Nonetheless, the D.C. Circuit stated that "defining the statutory standard of illegality in advance of specific adjudications does not in any formal sense circumvent this method of enforcement." *Id.*

The question, however, is not whether the structure of a statute "formal[ly]" *bars* an agency's exercise of purported authority, but rather whether Congress has affirmatively *granted* such authority. An agency "literally has no power to act … unless and until Congress confers power" to do so. *Louisiana Pub. Serv.*, 476 U.S. at 374; *see also Louisiana v. U.S. Dep't of Energy*, 90 F.4th 461, 472 (5th Cir. 2024). "Were courts to *presume* a delegation of power absent an express *withholding* of such power, agencies would enjoy virtually limitless hegemony." *Atlantic City Elec. Co. v. FERC*, 295 F.3d 1, 9 (D.C. Cir. 2002). Nor do courts put a thumb on the scale in favor of broad readings of agency authority, *see, e.g.*, *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 410-11 (2024), especially when statutory structure cuts the other way, *see, e.g.*, *Biden v. Nebraska*, 143 S.Ct. 2355, 2375-76 (2023).

**Headnote 2: "Maxim *expressio unius est exclusio alterius* is increasingly considered unreliable in statutory construction."**

The FTC Act declares unlawful "[u]nfair methods of competition," 15 U.S.C. §45(a)(1), and then sets out a detailed adjudicative process for when "the Commission shall have reason to believe that" a covered entity "has been or is using any unfair method of competition," *id.* §45(b). The Act thus contemplates that the FTC will adjudicate allegedly unfair methods of competition case-by-case—not define the meaning of "unfair methods of competition" nationwide via rulemaking.

In *National Petroleum*, the D.C. Circuit agreed that the FTC Act creates a particular framework for addressing unfair methods of competition, and that Section 5 nowhere mentions substantive rulemaking. 482 F.2d at 674-76. Yet the court refused to "apply the maxim of statutory construction *expressio unius est exclusio alterius*"—the principle that the expression of one thing (adjudication) implies the exclusion of another (substantive rulemaking)—to "conclude that adjudication is the *only* means of defining the statutory standard." *Id.* at 676. It reasoned that "[t]his maxim is increasingly considered unreliable, for it stands on the faulty premise that all possible alternative or supplemental provisions were necessarily considered and rejected by the legislative draftsmen." *Id.* (citations omitted).

Suffice it to say, neither the Supreme Court nor this Court considers the *expressio unius* canon "unreliable." *See, e.g.*, *Bittner v. United States*, 598 U.S. 85, 94 (2023) (describing "*expressio unius est exclusio alterius*" as a "traditional rule"); *Bartenwerfer v. Buckley*, 598 U.S. 69, 78 (2023) ("'When Congress includes particular language in one section of a statute but omits it in another section of the same Act,' we generally take the choice to be deliberate." (quoting *Badgerow v. Walters*, 596 U.S. 1, 11 (2022),

in turn quoting *Collins v. Yellen*, 594 U.S. 220, 248 (2021))); *Texas v. Becerra*, 89 F.4th 529, 542 (5th Cir. 2024), *cert. denied*, 2024 WL 4426546 ("[T]he *expressio unius est exclusio alterius* canon … can be used for addressing 'questions of statutory interpretation by agencies.'" (quoting *Texas v. United States*, 809 F.3d 134, 182 (5th Cir. 2015))). Granted, the canon does not always apply. But courts today do not dismiss it lightly.

> **Headnote 4: "In determining legislative intent, court's duty is to favor interpretation which would render statutory design effective in terms of policies behind its enactment and to avoid interpretation which would make such policies more difficult of fulfillment."**
>
> **Headnote 5: "Where statute is said to be susceptible of more than one meaning, court must not only consult its language but must also relate interpretation provided to felt and openly articulated concerns motivating law's framers."**

After recounting at length floor debates and other legislative history, the D.C. Circuit announced that courts must favor interpretations that would support Congress's purposes and "avoid an interpretation which would make such policies more difficult of fulfillment, particularly where, as here, that interpretation is consistent with the plain language of the statute." *Nat'l Petroleum*, 482 F.2d at 689. The court accordingly reasoned that judges should "not only consult [the FTC Act's] language," but also "the felt and openly articulated concerns motivating the law's framers." *Id.* at 690.

That is not how courts read statutes today. Courts do not base their decisions on what "policies" legislative history supports, especially because such history often

involves "looking over a crowd and picking out your friends." *In re DeBerry*, 945 F.3d 943, 950 (5th Cir. 2019) (quotation omitted). "[L]egislative history is not the law," *Epic Systems Corp. v. Lewis*, 584 U.S. 497, 523 (2018),[1] and "no legislation pursues its purposes at all costs," *Apter v. Dep't of Health & Hum. Servs.*, 80 F.4th 579, 589 (5th Cir. 2023) (quoting *Rodriguez v. United States*, 480 U.S. 522, 525-26 (1987)). In short, because "we're all textualists now," courts have a duty of "faithful adherence to the written law" and must reject outdated interpretative approaches that "elevate 'legislative history' and … curated accounts of a law's 'purposes' over enacted statutory text." *Loper Bright*, 603 U.S. at 443 n.6 (Gorsuch, J., concurring) (citations omitted).

Courts today, moreover, do not ask whether an agency's interpretation is "consistent with," *Nat'l Petroleum*, 482 F.2d at 689, the language Congress enacted but rather what interpretation of that language is "the best reading," *Loper Bright*, 603 U.S. at 400. The Supreme Court thus has rejected the "now-*ancien régime*" that asked whether the agency's interpretation was "reasonable" rather than correct. *Rest. L. Ctr. v. U.S. Dep't of Lab.*, 120 F.4th 163, 170 (5th Cir. 2024). Even the D.C.

---

[1] *See, e.g.*, *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 56 (2024) (unanimously explaining that the Court rejects outdated approaches that use "legislative history when assessing whether Congress abrogated sovereign immunity"); *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 678-79 (2020) (refusing to rely on "legislative history"); *Airlines for Am. v. Dep't of Transp.*, 110 F.4th 672, 676 (5th Cir. 2024) ("legislative history is not the law" (citing, *inter alia*, *Azar v. Allina Health Servs.*, 587 U.S. 566, 579 (2019) and *Milner v. Dep't of Navy*, 562 U.S. 562, 572 (2011))).

Circuit today agrees that outdated precedent should be overruled because courts "must enforce the statute that Congress enacted," which "requires courts to start with the statutory text, and to end there as well when, as here, the statute speaks clearly." *Allegheny Defense Project v. FERC*, 964 F.3d 1, 18 (D.C. Cir. 2020) (en banc) (quoting *Obduskey v. McCarthy & Holthus LLP*, 586 U.S. 466, 481 (2019)).

> **Headnote 6: "Defendant in enforcement proceeding by Federal Trade Commission must be given opportunity to demonstrate that special circumstances of his case warrant waiving rule's applicability."**
>
> **Headnote 7: "Any rules adopted by Federal Trade Commission as part of carrying out its duties to prevent unfair methods of competition are subject to judicial review testing their legality and insuring that they are within scope of broad statutory prohibition they purport to define."**
>
> **Headnote 8: "[Although receiving deference,] Federal Trade Commission is not free to write its own law of consumer protection and antitrust."**

Presumably recognizing the extraordinary consequences of its FTC-empowering interpretation, the D.C. Circuit—again based on legislative history—next engrafted a limit on the FTC's (new) authority: The agency must allow "a defendant in a Section 5 proceeding to demonstrate that the special circumstances of his case warrant waiving the rule's applicability, as where the rationale of the rule does not appear to apply to his own situation or a compelling case of hardship can be made out," which a court could review. *Nat'l Petroleum*, 482 F.2d at 692.

Here, the FTC does not suggest that it will not enforce the Non-Compete Rule in individual cases if a business can show "compelling … hardship." The Non-Compete Rule thus fails even under *National Petroleum*. That the D.C. Circuit, however,

felt obligated to graft new limits onto its own interpretation demonstrates the flaw in its reading. Interpretation has gone seriously awry when a statute must be retailored to make sense. *See, e.g.*, *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 328 (2014).

Nor is judicial review a panacea—especially deferential review of the sort contemplated by the *National Petroleum* court. *See Nat'l Petroleum*, 482 F.2d at 693 (explaining that "the Commission's conclusions as to the standard's reach are ordinarily shown deference"). "Congress in 1946 enacted the APA 'as a check upon administrators whose zeal might otherwise have carried them to excesses not contemplated in legislation creating their offices.'" *Loper Bright*, 603 U.S. at 391 (quoting *United States v. Morton Salt Co.*, 338 U.S. 632, 644 (1950)). Courts thus must decide questions of law "de novo," *id.* at 392 n.4, following an agency's proper application of all required procedures.

> **Headnote 9: "Fact that Federal Trade Commission did not assert power to promulgate substantive rules for many years and had indicated before that time that it lacked such power did not preclude finding that Commission had power to make such rules."**
>
> **Headnote 10: "Various statements made by Federal Trade Commission representatives questioning Commission's authority to promulgate rules which could be used with binding effect on subsequent adjudications were not determinative of whether Commission did in fact have power to make substantive rules."**

The D.C. Circuit recognized that its expansive reading ran headlong into a significant problem: For decades the FTC itself had disavowed substantive rulemaking authority, and in more than fifty years had never claimed such authority until *National Petroleum*. 482 F.2d at 693-94. The court was nonplussed, however, reasoning

that the FTC's decades-long failure to use this supposed power does not mean the power does not exist, and that "statements made by Commission representatives questioning its authority to promulgate rules which are to be used with binding effect on subsequent adjudications are not determinative[.]" *Id.* at 694.

Of course, an agency's views do not change what a statute says. But dismissing longstanding practice and express disavowals of authority is out of step with precedent. Courts today, after all, are highly skeptical "[w]hen an agency claims to discover in a long-extant statute an unheralded power to regulate a significant portion of the American economy," *Louisiana v. Biden*, 55 F.4th 1017, 1033 (5th Cir. 2022) (quoting *Util. Air*, 573 U.S. at 324) (cleaned up); *see also Chamber of Com. of United States v. U.S. Dep't of Lab.*, 885 F.3d 360, 387 (5th Cir. 2018) (expressing "no doubt" of this principle).

Furthermore, it is now black-letter law that courts are more likely to "respect" agency "interpretations issued contemporaneously with the statute at issue, and which have remained consistent over time[.]" *Loper Bright*, 603 U.S. at 394; *see also* Aditya Bamzai, *The Origins of Judicial Deference to Executive Interpretation*, 126 YALE L.J. 908, 987 (2017). Nor do courts lightly brush aside disavowals of authority, especially those that match the agency's earliest practices. *See, e.g.*, *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 146 (2000). None of these principles support *National Petroleum*.

**Headnote 11: "Fact that Congress was fully aware of Federal Trade Commission's restrictive view of its power and passed series of laws granting limited substantive rule-making authority to Commission did not preclude**

**finding that Commission did have rule-making power under original enactment.**

The D.C. Circuit also gave short shrift to the fact that Congress was aware of the FTC's disavowal of authority and enacted limited grants of rulemaking authority for specific topics that would serve no purpose if the FTC had always enjoyed such power. *See Nat'l Petroleum*, 482 F.2d at 695-96 (collecting statutes). The D.C. Circuit speculated that "Congress granted the power out of uncertainty, understandable caution, and a desire to avoid litigation," and emphasized that legislative history from the 1960s suggests "many congressmen" thought the issue "to be an open question, despite the protestations of the Commission's chairman that the agency was powerless under the 1914 Act." *Id.* at 696.

Once more, that is not how courts read statutes. As Judge Brown explained, "if Section 6(g) had already given the Commission such substantive rulemaking power, these amendments would be superfluous." *Ryan*, 2024 WL 3879954, at *11. Courts, however, read statutes to avoid surplusage: "The rule against superfluities instructs courts to interpret a statute to effectuate all its provisions, so that no part is rendered superfluous." *Id.* (quoting *Howard Hughes Co. v. C.I.R.*, 805 F.3d 175, 183 (5th Cir. 2015), in turn quoting *Hibbs v. Winn*, 542 U.S. 88, 89 (2004) (cleaned up)). Furthermore, that Congress knows how to enact language authorizing substantive rulemaking but failed to do so in Rule 6(g) itself speaks volumes under settled precedent. *See, e.g.*, *Airlines for Am.*, 110 F.4th at 675 ("If Congress wanted to authorize this kind of legislative rulemaking, it could have drawn on language from other provisions.").

In fact, the D.C. Circuit's speculation of what Congress had in mind violates a cardinal rule: "[I]t is our role to make sense rather than nonsense out of the *corpus juris.*" *Arulnanthy v. Garland*, 17 F.4th 586, 596 (5th Cir. 2021) (quoting *W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 101 (1991)). Nor does such speculation make sense even on the court's own terms. By its own account of the legislative history, it was not until half a century after the FTC Act's enactment that some in Congress suggested that perhaps the FTC could issue substantive rules. *See Nat'l Petroleum*, 482 F.2d at 696. Yet Section 6(g) was enacted in 1914—not 1966. *Id.*

**Headnote 12: "Federal Trade Commission Act conferred on Federal Trade Commission the authority to promulgate trade regulation rules having effect of substantive law."**

As the culmination of its series of errors, *National Petroleum* concludes that the FTC may promulgate substantive competition rules. The D.C. Circuit emphasized rulemaking's benefits and that courts should "interpret liberally broad grants of rule-making authority like the one we construe here[.]" *Id.* at 680. Yet whether the FTC has such authority is a question for Congress to answer in a statute—and cannot be answered based on a court's view, influenced by legislative history, of what would best effectuate agency purposes. "We are governed by laws, not by the intentions of legislators." *Conroy v. Aniskoff*, 507 U.S. 511, 519 (1993) (Scalia, J., concurring).

## B. *National Petroleum* ignores other rules of interpretation.

Not only does *National Petroleum* rest on mistaken principles of interpretation, but it also omits principles that courts today routinely apply.

**1.** To begin, the D.C. Circuit did not address the major-questions doctrine. This doctrine serves two purposes. First, it "is a tool for discerning—not departing from—the text's most natural interpretation." *Nebraska*, 143 S.Ct. at 2376 (Barrett, J., concurring). It thus starts from the premise that Congress "speak[s] clearly when authorizing an agency to exercise powers of vast economic and political significance." *Ala. Ass'n of Realtors v. HHS*, 594 U.S. 758, 764 (2021) (per curiam) (cleaned up). Second, it helps effectuate the nondelegation doctrine. "Much as constitutional rules about retroactive legislation and sovereign immunity have their corollary clear-statement rules, Article I's Vesting Clause has its own: the major questions doctrine." *West Virginia v. EPA*, 597 U.S. 697, 740 (2022) (Gorsuch, J., concurring).

Whether the FTC may use Section 6(g) to promulgate substantive rules is a major question. The FTC admits that "approximately one in five American workers—or approximately 30 million workers—is subject to a non-compete," *Ryan*, 2024 WL 3879954, at *2, and estimates that its rule will require employers to pay "$400-$488 billion" more in wages "over the next decade," FTC, Constituent Support for the FTC's Noncompete Rule, Texas | Statewide Impact (2024), https://tinyurl.com/37f6t4zc. The Supreme Court has applied the major-questions doctrine to a program worth $50 billion, *see Ala. Ass'n of Realtors*, 594 U.S. at 764, and this Court has held that "nearly $3 billion in compliance costs" can trigger it, *BST Holdings, LLC v. OSHA*, 17 F.4th 604, 617 (5th Cir. 2021). Nor is the issue "merely financial." *Ala. Ass'n of Realtors*, 594 U.S. at 764. Changing material terms of tens of

millions of contracts undermines federalism by nullifying State law across the country. The Non-Compete Rule, moreover, is only one of many potential applications of the FTC's expansive view of its claimed rulemaking authority.

In *National Petroleum*, the plaintiffs raised a proto-major-questions doctrine argument, urging that "substantive rule-making represents a sufficiently important innovation in Commission practice for us to balk at authorizing its use on the basis of an arguably ambiguous statute in the absence of very firm indications of affirmative and specific legislative intent." 482 F.2d at 691. The D.C. Circuit brushed that concern aside, *id.* at 692, but courts today would take it much more seriously. Whatever one thinks of the FTC Act, it does not contain "exceedingly clear language," *Ala. Ass'n of Realtors*, 594 U.S. at 764, authorizing substantive competition rules.

**2.** Related to the major-questions doctrine is the elephants-in-mouseholes principle that "Congress … does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions." *Heating, Air Conditioning & Refrigeration Distribs. Int'l v. EPA*, 71 F.4th 59, 67 (D.C. Cir. 2023) (quoting *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001)). This principle applies when there is a disconnect between the scope of the authority asserted and the grant of power enacted, even if the asserted authority does not trigger the major-questions doctrine. *Id.*; *see also Am. Bar Ass'n v. FTC*, 430 F.3d 457, 467 (D.C. Cir. 2005) (even regulation of bar associations can raise "elephant[] in mousehole" concerns and require a court to apply the doctrine).

Here, the FTC purports to find extraordinary authority in an ancillary provision—a statutory list of "additional powers" that begins with authority to investigate and mandate reports and ends with funding meetings with foreign officials. *See Ryan*, 2024 WL 3879954, at \*2; 15 U.S.C. §46. In the middle of that list—in a sentence whose first half concerns classifying corporations—is power to make rules. 15 U.S.C. §46(g). The FTC says that provision authorizes substantive competition rules. It is beyond implausible, however, that Congress would have placed such an extraordinary power in such an out-of-the-way provision. Because *National Petroleum* was not hunting for elephants or mouseholes, it said little about this textual incongruity.

**3.** The D.C. Circuit also expressed no awareness of the danger posed by flipflopping regulation. Yet for significant policies, what one administration does, the next administration will undo. In *Loper Bright*, the Supreme Court worried about such flipflopping and warned against "foster[ing] unwarranted instability in the law, leaving those attempting to plan around agency action in an eternal fog of uncertainty." 603 U.S. at 411; *see also In re MCP No. 185*, No. 24-7000, 2024 WL 3650468, at \*6 (6th Cir. Aug. 1, 2024) (Sutton, C.J., concurring) (similar).

The anti-flipflopping principle applies here in spades. The FTC asserts breathtaking authority, despite previously disavowing it for decades. And it is possible a different administration will undo what the FTC is trying to do here. If allowed, future administrations will also use this power to promulgate substantive rules for

other high-profile policies, which will spur even more flipflopping. Such a destabilizing interpretation of the FTC's authority is not tenable after *Loper Bright*.

**4.** *National Petroleum* also did not address constitutional avoidance—perhaps because the Supreme Court had not yet reinvigorated the constitutional principle that courts should construe broad statutes narrowly to avoid nondelegation concerns. *See, e.g.*, Cass R. Sunstein, *It All Started With* Benzene, 76 ADMIN. L. REV. 673, 687 (2024) (contending that courts began enforcing this principle in 1980). Today, however, courts avoid nondelegation concerns, not invite them.

Here, the FTC's far-reaching view of its authority runs headlong into the Constitution's vesting of legislative power in Congress. If Congress gave the FTC power to promulgate rules governing tens of millions of employees based on little or nothing more than Section 5's prohibition of "unfair method[s] of competition," there is no intelligible principle to govern and guide that extraordinary delegation. *Cf.* Andrew S. Oldham, *Sherman's March (in)to the Sea*, 74 TENN. L. REV. 319, 325 (2007) (similar argument regarding the Sherman Act). Yet "application of the nondelegation doctrine principally has been limited to the interpretation of statutory texts, and, more particularly, to giving narrow constructions to statutory delegations that might otherwise be thought to be unconstitutional." *Mistretta v. United States*, 488 U.S. 361, 373 n.7 (1989); *see also Gundy v. United States*, 588 U.S. 128, 135-36 (2019) (plurality op.).

Here, such a narrowing construction is warranted. Congress "must provide substantial guidance" with respect to "standards that affect the entire national

economy." *Whitman*, 531 U.S. at 475. Case-by-case adjudication (which the FTC Act allows) is suited for case-by-case analysis. If the FTC wishes to begin regulating broadly and nationwide in one fell swoop, Congress must tell the FTC what it can do with meaningful specificity.

**5.** Finally, the D.C. Circuit failed to appreciate that the FTC's view of its authority would allow the agency to "intrude[] into an area that is the particular domain of state law." *Ala. Ass'n of Relators*, 594 U.S. at 764. Such intrusion triggers the rule that Congress must provide a "clear statement" before rearranging "the usual constitutional balance of federal and state powers." *Bond v. United States*, 572 U.S. 844, 858 (2014) (quotation omitted). As the Supreme Court has explained, "if Congress intends to alter the usual constitutional balance between the States and the Federal Government, it must make its intention to do so unmistakably clear in the language of the statute." *Gregory v. Ashcroft*, 501 U.S. 452, 460-61 (1991) (cleaned up).

Here, the implications of the FTC's position for federalism are extraordinary. For centuries, States—not the federal government—have had primary authority over contract law and regulating local businesses. Yet under the FTC's theory, a federal regulator can upend all of that by rule. If Congress wishes to displace the power of the States, it must enact legislation that clearly expresses its intentions. Far from addressing this point, *National Petroleum* never mentions federalism.

\*\*\*

*National Petroleum* does not withstand scrutiny. Even a prominent defender of noncompete bans agrees it rests on "reasoning that no court has used in decades,"

and "[t]he Supreme Court is virtually certain" to reject. Richard Pierce, *Unsolicited Advice for FTC Chair Khan*, Yale J. on Reg. Notice & Comment (Jul. 15, 2021), https://tinyurl.com/d532katv. The Court should not follow it.

## II. State Variety is a Feature of Federalism.

Despite the FTC's lack of authority to issue substantive competition rules, some *amici* have filed a brief with the Court arguing that there should be a "uniform" rule—or at least a "floor"—for the whole country with respect to noncompete laws. D.C. Brief at 18. This policy argument misunderstands our Constitution.

### A. The basics of federalism.

Under the Constitution's allocation of powers, the States enjoy primacy with respect to lawmaking. *See, e.g.*, *Bond*, 572 U.S. at 854. The federal government can only impose federal obligations if the policy falls within an enumerated power and, critically, only if valid federal legislation has been enacted. *See, e.g.*, *id.* Such federal legislation must pass both Houses of Congress and survive a presidential veto—a process that, "by design," is difficult to successfully navigate and that effectively requires national consensus. Manning, *supra*, at 202. Absent such a consensus, each State remains free to legislate within its borders as it sees fit.

Because policy is primarily made at the state rather than national level, and because States often disagree about what the best policy is, there is no uniform rule for a great many issues. *See, e.g.*, *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 338 (2022) (Kavanaugh, J., concurring) (explaining that States are regularly free to address for themselves "difficult questions of … social and economic policy"). If

Congress—acting through bicameralism and presentment and pursuant to an enumerated power—elects to create a uniform rule, it can. But until Congress does, States may disagree because of their own respective sovereignties.

There is much wisdom in this feature of the Constitution. Because every State is accountable to its own citizens, policy can be better tailored to the needs of different places. *See, e.g.*, *Berger v. N.C. State Conference of the NAACP*, 597 U.S. 179, 192 (2022). Policy experimentation is also possible, helping avoid national mistakes. *Id.*

## B. State variety is especially valuable here.

In their brief to this Court, the District of Columbia *amici* advance a very different view of federalism. Rather than viewing variety in policy approaches as a constitutional feature, they view it as a problem—at least for noncompete agreements. *See* D.C. Brief at 21-22. Instead, they urge the Court to seek uniformity. *See id.* at 25. That's not how federalism works.

In fact, federalism's variety is most important for policy debates such as this one. The economics of noncompete agreements are complex and involve difficult trade-offs between, on one hand, training employees and providing them with human capital (and potentially trade secrets), and, on the other hand, reduced labor mobility. *See Ryan*, 2024 WL 3879954, at *13. Given the complexity of the issue, it is far from obvious what policy option strikes the best balance, let alone whether the same policy makes sense nationally despite local differences in business types and operations.

Some States may believe that there is only one answer to this policy dispute, but our Constitution allows each State to decide for itself what to do absent valid federal

law. The mere fact that States disagree, moreover, does not itself provide a basis for federal law. Instead, State-level regulation is the constitutional default.

Here, the District of Columbia *amici* express a certitude about noncompete agreements that the facts do not support—as Judge Brown explained. *See id*. They also offer a one-sided account that overlooks the extraordinary range of circumstances in which the FTC's new regulation will apply. They also never explain why—if their account was the full story—they could not ban noncompete agreements within their borders, and thus gain the supposed benefits of the FTC's rule without any need for a federal command. The closest they come to making an argument for a uniform rule is to invoke multistate markets, for which they speculate that local differences will result in inefficiencies. *See* D.C. Brief at 22-25. Especially in this context, such an argument proves far too much.

## III. The District Court Properly Vacated the Rule.

Finally, the FTC challenges Judge Brown's decision to vacate the Non-Compete Rule. The FTC broadly criticizes (at 49) universal relief as in "conflict[] with principles of Article III and equity[.]" Yet the Supreme Court left in place a nationwide injunction in *Nebraska*, 143 S.Ct. at 2376, and issued a nationwide stay in *NFIB v. OSHA*, 595 U.S. 109, 120 (2022) (per curiam). Further, vacatur is a distinct form of relief. *See, e.g.*, *Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 603 U.S. 799, 827 (2024) (Kavanaugh, J., concurring) (defending vacatur). Here, vacatur is warranted and substantially benefits federalism.

### A. Vacatur is an appropriate remedy.

In assessing vacatur, the Court should start "with the text of the statute." *Bartenwerfer*, 598 U.S. at 74. "The text of the APA means what it says." *Ryan,* 2024 WL 3879954, at *14 (quoting *Loper Bright*, 603 U.S. at 393). The APA directs that courts "shall" "hold unlawful *and set aside* agency action, findings, and conclusions found to be," *inter alia*, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "contrary to constitutional right, power, privilege, or immunity," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. §706(2)(A)-(C) (emphasis added). Accordingly, the key verb is "set aside."

A court "set[s] aside agency action" by vacating it. *Id.* §706(2); *see also Corner Post*, 603 U.S. at 826 (Kavanaugh, J., concurring). When Congress adopted the APA, "set aside" meant "to cancel, annul, or revoke." Black's Law Dictionary 1612 (3d ed. 1933). Thus, "the [APA] establishes a unique form of judicial review that differs from judicial review of statutes." Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933, 950 (2018). Just five years after the APA's enactment, the Third Circuit stated that Section 706(2) "affirmatively provides for vacation of agency action[.]" *Cream Wipt Food Prods. Co. v. Fed. Sec. Adm'r*, 187 F.2d 789, 790 (3d Cir. 1951). And as this Court has explained, Congress never abrogated such authority. *See, e.g.*, *Duarte v. Mayorkas*, 27 F.4th 1044, 1059 (5th Cir. 2022). Because a court "shall" "set aside" invalid rules, the district court correctly vacated the rule here, especially because no other form of relief would be appropriate to remedy this rule's foundational legal flaws. *See Ryan*, 2024 WL 3879954, at *14.

## B. Federalism supports vacatur.

As described above and detailed at length in the D.C. Brief, States across the country are experimenting with how to regulate noncompete agreements. The FTC, however, seeks to cut that widespread experimentation short by creating a nation-wide rule that prevents States from responding to voter wishes and local circum-stances. Vacating the FTC's rule will not prevent any State from banning noncom-pete agreements within its own borders, so long as the State goes through its own lawmaking process. Vacatur, however, will protect States from an unlawful federal regulation. Where a federal agency exceeds its authority, courts should vacate that unlawful regulation, thus allowing federalism to flourish.

## CONCLUSION

The Court should affirm the judgment below.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

/s/ Aaron L. Nielson

AARON L. NIELSON
Solicitor General
aaron.nielson@oag.texas.gov

BRENDAN FUGERE
Assistant Attorney General

Counsel for the State of Texas

## ADDITIONAL COUNSEL

STEVE MARSHALL
Alabama Attorney General

TIM GRIFFIN
Arkansas Attorney General

JOHN GUARD
Florida Acting Attorney General

CHRISTOPHER M. CARR
Georgia Attorney General

RAÚL LABRADOR
Idaho Attorney General

THEODORE E. ROKITA
Indiana Attorney General

BRENNA BIRD
Iowa Attorney General

LIZ MURRILL
Louisiana Attorney General

LYNN FITCH
Mississippi Attorney General

AUSTIN KNUDSEN
Montana Attorney General

MICHAEL T. HILGERS
Nebraska Attorney General

DAVE YOST
Ohio Attorney General

ALAN WILSON
South Carolina Attorney General

MARTY JACKLEY
South Dakota Attorney General

JONATHAN SKRMETTI
Tennessee Attorney General

DEREK BROWN
Utah Attorney General

JASON MIYARES
Virginia Attorney General

JOHN B. MCCUSKEY
West Virginia Attorney General

### Certificate of Service

On February 10, 2025, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Aaron L. Nielson
Aaron L. Nielson

### Certificate of Compliance

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) because it contains 6,261 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Aaron L. Nielson
Aaron L. Nielson